356 So.2d 368 (1978)
Dr. Robert WENDLAND and Donna Wendland, Jointly and Severally, Appellants,
v.
Janet AKERS and N.D. Petschulat, Appellees.
Nos. 76-1616 and 76-1844.
District Court of Appeal of Florida, Fourth District.
March 14, 1978.
Rehearing Denied April 7, 1978.
Nancy Little Hoffman and Druck, Grimmett, Norman, Weaver & Scherer, Fort Lauderdale, for appellants.
Carey M. Fischer of Ferrero, Middlebrooks & Houston, Fort Lauderdale, for appellee-Akers.
Gerald E. Rosser and Lawrence B. Craig, III, of Corlett, Merritt, Killian & Sikes, Miami, for appellee-Petschulat.
DREW, E. HARRIS (Ret.), Associate Judge.[*]
Janet Akers, an assistant to Dr. N.D. Petschulat, a veterinarian, sued Robert and Donna Wendland, the owners of a large German Shepherd dog, for injuries received by her while assisting her employer, Dr. Petschulat, extract blood from the leg of the dog for the purpose of confirming a previous diagnosis by another veterinarian of heart worms. The Wendlands filed a third party complaint against Dr. Petschulat alleging negligence on the part of Dr. Petschulat in handling the dog as the sole, *369 proximate cause of Akers' injuries. Dr. Petschulat denied negligence and pled the affirmative defenses of assumption of risk and contributory negligence by Akers,[1] lack of contractual duty, and strict liability on the part of the Wendlands. From a verdict and judgment of $25,000 in favor the plaintiff against the defendants Robert and Donna Wendland this appeal has been taken.
Plaintiff's case is bottomed on Section 767.04, Florida Statutes.[2] That statute was first enacted in 1949. In Romfh v. Berman, 56 So.2d 127 (Fla. 1952) it was said to impliedly repeal Section 767.01, Florida Statutes.[3] Later, in Sweet v. Josephson, 173 So.2d 444 (Fla. 1965), the Supreme Court decided that the two statutes were not inconsistent. In that case the Court said:
"In sum, the first statute [Section 767.01] fixes liability on the owner for any damage at all caused by his dog; the second statute [Section 767.04] puts upon him responsibility only for injury caused by the bite of his dog." (Emphasis supplied.) 173 So.2d at 446.
Hence, it is unnecessary to discuss Section 767.01, supra, and the numerous cases[4] involving damages occasioned by other acts of dogs.[5]
*370 Turning now to Sec. 767.04, it is clear that this enactment was a recognition that the need to protect an agrarian society from depredations of dogs on live stock and crops, as was the purpose of the then existing statute, 767.01, was no longer the main purpose to be served and that such statute should be revised, not only for the purpose of protecting those damaged by acts of dogs but to relieve the owners of dogs used for pets and protection of the owners in modern society from the harshness of the strict liability created by the former statute. It especially relieved the owner of liability under the conditions set forth therein, to which we will refer at greater length later in this opinion.
We find nothing in this statute which indicates any intention to hold a dog owner strictly liable in a dog bite case where the proximate cause of the injury was the intervening negligence of another person. On the contrary, the provision of the statute that "no owner of any dog shall be liable for any damages to any person ... when such person shall mischievously or carelessly provoke or aggravate the dog inflicting such damage" (emphasis supplied) clearly expresses a contrary intention. It is for the protection of an owner who is free from fault or negligence which proximately causes the injury.
The facts here establish without dispute that Dr. Petschulat was an experienced and qualified veterinarian. Mrs. Wendland, who brought the dog to him for treatment and employed the veterinarian for that purpose, surrendered the possession and control of the dog to the veterinarian who thereafter put the dog on the examining table, called on his assistant for aid and was proceeding to perform the professional services that he had been employed by Mrs. Wendland to perform. He was the person of superior knowledge and in possession and control of the agency which inflicted the injury. He was presumed to have the superior knowledge of the proper manner of performing the duties of his profession. He was an independent contractor[6] under the law.
"The right of control as to the mode of doing the work contracted for is one of the principal considerations in determining whether one employed is an independent contractor or a servant." Gulf Refining Company v. Wilkinson, 94 Fla. 664, 114 So. 503. Also see American Jurisprudence 2nd, Independent Contractors, Para. 6.
The veterinarian determined absolutely the method of treatment and handling of the dog. While Mrs. Wendland was present, and while Dr. Petschulat said he asked Mrs. Wendland if the dog would bite, was gentle, or had a history of insubordination, and was disarmed by her negative answer,[7] he had no legal right to rely on such statements under the circumstances where the possibility of injury to others was so obvious and well proven.[8]
We have referred to the provision of the statute with reference to carelessly aggravating or provoking a dog. Here is a classic example of what the Legislature intended to relieve an owner for liability for  a large German Shepherd dog in strange surroundings, with strange odors, held by two people he had never seen, one standing by him with her arms around his neck to immobilize *371 the front leg for insertion of a needle and the other pressing his head down. This conduct can be described as nothing less than "carelessly aggravating and provoking" the animal as the statute says. Assumption of risk and lack of proximate cause are clearly applicable defenses.[9] An intervening efficient independent fault which solely causes or results in injury relieves the owner of an animal from liability.[10]
Throughout these cases, there is the constant reference to strict liability under the statute. Many years ago the Supreme Court held that an automobile was a dangerous instrumentality and said the owner was liable for damages inflicted on others by said automobile when the same was operated on the public highways by any person with his actual or implied consent.[11] The rule of law growing out of these cases is very analogous to that which has arisen out of the statutes above discussed. Liability flowing from the operation of a dangerous instrumentality and inherently dangerous work is subject to the exception of independent contractors.
"It may well be said that such doctrines (dangerous instrumentalities and inherently dangerous work) apply without exception to third party members of the general public, but we do not believe they apply without exception under all circumstances where an independent contractor and his employees are involved, absent any allegation or showing of an act of negligence or omission of duty or proper care on the part of a defendant engaged in a hazardous occupation who has contracted with an independent contractor to perform inherently dangerous work."[12]
Logic and reason compel the conclusion that such exception should be applied here. The record here leaves no doubt as to the status of Dr. Petschulat as one of an independent contractor. His employment and his complete control over the performance of the contract made the alleged negligence of the Wendlands in not telling Dr. Petschulat that the dog would bite, if true, remote and unrelated to the proximate cause of plaintiff's injury.
We have alluded to the defense of assumption of risk by Mrs. Akers. Three veterinarians testified.[13] Each testified that dog bite was an occupational hazard in the veterinary profession. The plaintiff also conceded that when she started work with Dr. Petschulat, she was well aware of that. This defense, however, is applicable only to claim of Mrs. Akers against Dr. Petschulat  and that judgment is not before us for review.[14]
In capsulized form we hold: the owner of a dog is not liable to a third party for damages from being bitten or otherwise injured by such dog subsequent to the delivery of possession and control of the dog to a qualified veterinarian for care or treatment and the acceptance of such employment and possession by the veterinarian, in the absence of a showing of active negligence by the owner which contributes directly to and becomes the proximate cause of said injury.
For the reasons stated herein, the defendants' motion for a directed verdict should have been granted by the trial judge. The cause is reversed and remanded to the trial court with directions to enter judgment for the defendants Robert Wendland and Donna Wendland.
REVERSED AND REMANDED.
ALDERMAN, C.J., and MOORE, J., and STETTIN, HERBERT, Associate Judge, concur.
NOTES
[*] Justice Drew wrote this opinion prior to his death. It is now adopted as our decision in this case.
[1] The record reveals that Akers' medical expenses were paid from Workmen's Compensation insurance. The appropriateness of the defenses of contributory negligence and assumption of risk here was not raised, nor was the question of the employer's immunity under the Workmen's Compensation Act from tort liability or third party claims for indemnity or contribution raised or discussed.
[2] "Liability of owners.  The owners of any dog which shall bite any person, while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of such dogs, shall be liable for such damages as may be suffered by persons bitten, regardless of the former viciousness of such dog or the owners' knowledge of such viciousness. A person is lawfully upon private property of such owner within the meaning of this act when he is on such property in the performance of any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States, or when he is on such property upon invitation, expressed or implied, of the owner thereof; provided, however, no owner of any dog shall be liable for any damages to any person or his property when such person shall mischievously or carelessly provoke or aggravate the dog inflicting such damage; nor shall any such owner be so liable if at the time of any such injury he had displayed in a prominent place on his premises a sign easily readable including the words `Bad Dog.'" Sec. 767.04, Fla. Stat.
[3] 767.01 "Owners of dogs shall be liable for any damage done by their dogs to sheep or other domestic animals or livestock, or to persons."
[4] Sweet v. Josephson, supra; Brandeis v. Felcher, 211 So.2d 606 (Fla. 3d DCA 1968); Allstate Ins. Co. v. Greenstein, 308 So.2d 561 (Fla. 3d DCA 1975); Mapoles v. Mapoles, 350 So.2d 1137 (Fla. 1st DCA, filed October 24, 1977; Smith v. Allison, 332 So.2d 631 (Fla. 3d DCA 1976); English v. Seachord, 243 So.2d 193 (Fla. 4th DCA 1971), writ discharged, 259 So.2d 136 (Fla. 1972); Rutland v. Biel, 277 So.2d 807 (Fla. 2d DCA 1973) and Christie v. Anchorage Yacht Haven, Inc., 287 So.2d 359 (Fla. 4th DCA 1973).
[5] It is interesting to observe, however, the historical background of this statute. As originally enacted in 1881, the wording was:

"That all owners of dogs shall be held liable and responsible for damages to sheep or other stock killed or maimed by their dogs." Chapter 3294, Laws of Florida (1881).
Thus, damage to persons was not included. But in the 1892 Compilation, Section 2341 provided:
"Owners of dogs shall be held liable for damages to persons and stock killed or injured by their dogs." (Emphasis supplied.)
We find no legislative enactment to include damages to persons within the scope of the statute.
Later, in 1901, the legislature enacted Chapter 4979, Laws of Florida (1901), which provided:
"When any dog or dogs shall kill or in any way damage sheep or other domestic animals in this State, the owner of such dog or dogs shall be liable upon the action for damages to the owner of such sheep and other domestic animals for the damage committed upon the same by such dogs."
But in the next Compilation in 1906, Section 3142 provided:
"Owners of dogs shall be liable for any damage done by their dogs to sheep or other domestic animals or live stock, or to person." (Emphasis supplied.)
Thus once again the compiler placed words in the Compilation which were not there when the act was adopted by the legislature. Although the validity of Section 767.01, Florida Statutes (1975), cannot now be questioned because of the rules relating to statutory re-enactments, Section 767.01 should be given a restrictive scope because the legislature never specifically included damage to persons within the purview of the statute, at the time of the enactment of these laws.
[6] "It is the general rule that a physician or surgeon, being a professional man, is entirely free to exercise his skill and his soundest judgment in rendering medical or surgical services without any interference from one who employs him and is not a servant or agent in the usual sense of those terms." 41 Am.Jur. Physicians and Surgeons, Para. 116. Anno: 19 A.L.R. 1185.
[7] This evidence of Dr. Petschulat, Akers and Mrs. Wendland is in conflict in many details.
[8] Dr. Petschulat and the other veterinarians who testified readily conceded that being bitten by a dog was a usual hazard of their business and that muzzling a dog before examination or treatment was the accepted measure for protection against such occurrences.
[9] Hall v. Ricardo, 297 So.2d 849 (Fla. 3d DCA 1974).
[10] Isaacs v. Powell, 267 So.2d 864 (Fla. 2d DCA 1972).
[11] Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). Also see U. of Miami Law Review, Vol. 22, pages 367, et seq.
[12] Fla. Power & Light v. Price, 170 So.2d 293 (Fla. 1964).
[13] Dr. Petschulat, Dr. Nelson and Dr. Phillips.
[14] See footnote # 1.