408 So.2d 769 (1982)
UTICA MUTUAL INSURANCE COMPANY, Appellant,
v.
Donald Roy JONES, a Minor, by and through His Parents and Next Friends, Donald Revis Jones and Karen Lois Jones, Individually, and Roy G. Davis d/b/a Tampa Wholesale Nursery, Appellees.
No. 80-1909.
District Court of Appeal of Florida, Second District.
January 13, 1982.
*770 Timon V. Sullivan and David R. Tyrrell of Shackleford, Farrior, Stallings & Evans, Tampa, for appellant.
Joel S. Perwin and Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, Miami, and Wagner, Cunningham, Vaughan & McLaughlin, Tampa, for appellees Donald Roy Jones, Donald Revis Jones, and Karen Lois Jones.
Howard L. Garrett of Garrett & Garrett, Tampa, for appellee Roy G. Davis, d/b/a Tampa Wholesale Nursery.
BOARDMAN, Judge.
Utica Mutual Insurance Company, one of the defendants in the trial court, appeals a final judgment awarding damages against it and appellee/defendant Roy G. Davis in favor of plaintiffs/appellees Donald Roy Jones (Donnie) and his parents. We reverse.
The facts are that on January 25, 1974, Michael Davis, appellee Davis' son, invited Donnie, who was then twelve years old, over to his house to play. When Donnie arrived, Kenneth King, another friend of Michael and Donnie, was also present.
At some point, the boys decided to tie Shane, a German shepherd belonging to the Davises, to a little red wagon in the hope that the dog would pull them in the wagon. After the dog was tied to the wagon by means of a rope looped through her collar, the boys began running alongside the wagon and jumping into it. However, because Shane proved to be too weak to pull the boys, they soon abandoned this sport and began walking or running toward the rear of the Davis property. Shane, who was still tied to the wagon, accompanied them.
As they were running along, Donnie's dog suddenly emerged from the bushes ahead of them, and Shane ran after the other dog. As Shane ran past Donnie, who was slightly ahead of Shane and the other two boys, some portion of the wagon struck Donnie, resulting in permanent injury to his leg.
The instant lawsuit against Davis and appellant, his insurer, ultimately ensued. The complaint was predicated on Section 767.01, Florida Statutes (1979), which provides: "Owners of dogs shall be liable for any damage done by their dogs to sheep or *771 other domestic animals or livestock, or to persons."
In construing a statute, the court should where possible consider its history, the evil to be corrected, the intent of the legislature, the subject regulated, and the object to be obtained. Englewood Water District v. Tate, 334 So.2d 626 (Fla. 2d DCA 1976). The Fourth District Court of Appeal in Wendland v. Akers, 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla. 1979), traced the history of section 767.01 as follows:
As originally enacted in 1881, the wording was:
"that all owners of dogs shall be held liable and responsible for damages to sheep or other stock killed or maimed by their dogs." Chapter 3294, Laws of Florida (1881).
Thus, damage to persons was not included. But in the 1892 Compilation, Section 2341 provided:
"Owners of dogs shall be held liable for damages to persons and stock killed or injured by their dogs." (Emphasis supplied.)
We find no legislative enactment to include damages to persons within the scope of the statute.
Later, in 1901, the legislature enacted Chapter 4979, Laws of Florida (1901), which provided:
"When any dog or dogs shall kill or in any way damage sheep or other domestic animals in this State, the owner of such dog or dogs shall be liable upon the action for damages to the owner of such sheep and other domestic animals for the damage committed upon the same by such dogs."
But in the next Compilation in 1906, Section 3142 provided:
"Owners of dogs shall be liable for any damage done by their dogs to sheep or other domestic animals or live stock, or to person." (Emphasis supplied.)
Thus once again the compiler placed words in the Compilation which were not there when the act was adopted by the legislature. Although the validity of Section 767.01, Florida Statutes (1975), cannot now be questioned because of the rules relating to statutory re-enactments, Section 767.01 should be given a restrictive scope because the legislature never specifically included damage to persons within the purview of the statute at the time of the enactment of these laws.
Id. at 369-370, n. 5.
Prosser, Law of Torts, 581 (4th ed. 1971), states: "Strict liability has been confined to consequences which lie within the extraordinary risk whose existence calls for such special responsibility." Consequently, appellant argues, section 767.01 should be construed to render dog owners liable only for the risk they created by owning the dog. Only when the injury was caused "as a result of canine characteristics for which the legislature intended to make the owner an insurer" should liability be imposed. Mapoles v. Mapoles, 350 So.2d 1137, 1138 (Fla. 1st DCA 1977) (Smith, J., dissenting), cert. denied, 364 So.2d 888 (Fla. 1978). "Where ... the damage results from some physical agency set into motion by a chain of events which may have been triggered by the presence of the dog, absolute liability should not be imposed." Smith v. Allison, 332 So.2d 631, 634 (Fla. 3d DCA 1976).
We agree. Statutory liability pursuant to section 767.01 should be imposed upon the dog owner only where the damage done by the dog is the direct cause of the injury. Smith v. Allison, supra. In determining whether the dog itself directly caused the injury, we must examine whether the injury was caused by some canine characteristic within the contemplation of the statute.
While Shane's chasing another dog present in the area obviously constitutes the type of canine characteristic within the contemplation of the statute, it was not that conduct which directly caused Donnie's injury. But for the wagon, no injury would have occurred when Shane ran past Donnie, inasmuch as the dog never came in contact with the boy. Because this injury was not caused as a result of the risk created by dog *772 ownership, we hold that section 767.01 does not apply here.
We recognize that our decision conflicts with Mapoles v. Mapoles, supra. There a St. Bernard dog was placed on the rear seat of a Volkswagen, where the owner of the vehicle had previously placed a loaded 12-gauge pump shotgun. Shortly thereafter, the dog's movements caused the gun to discharge and severely injure the plaintiff, who was standing outside the vehicle. The court held that the damage to the plaintiff was caused by the affirmative act of the dog. We believe the Mapoles decision extends the liability under section 767.01 far beyond that contemplated by the legislature and that Judge Smith's dissent expresses the better view.
It has also been held that section 767.01 is inapplicable "where the dog takes no affirmative or aggressive action toward the injured party." Rutland v. Biel, 277 So.2d 807, 809 (Fla. 2d DCA 1973); Smith v. Allison, supra. Donnie's injuries here were in no way attributable to an affirmative or aggressive act toward him by the dog. Although Shane clearly was engaged in an aggressive act toward Donnie's dog, Donnie would not personally have been affected by Shane's act of chasing his dog had the wagon, which was what came in contact with Donnie, not been left tied to Shane. But see English v. Seachord, 243 So.2d 193 (Fla. 4th DCA 1971), cert. dismissed, 259 So.2d 136 (Fla. 1972); Brandeis v. Felcher, 211 So.2d 606 (Fla. 3d DCA), cert. denied, 219 So.2d 706 (Fla. 1968).
The other point raised by appellant concerns whether Davis' insurance policy with appellant covers Donnie's injuries. We agree with appellant that it does not. The policy covers only accidents arising out of the conduct of Davis' nursery business. Neither the three boys nor the dog were involved in an activity related to the business at the time the injury occurred.
Although, at the time of the accident, the boys were proceeding toward the back of the nursery where the irrigation system control was located, there was no evidence that they were doing so for the purpose of adjusting those controls. Moreover, while Shane was used after business hours as a watchdog, she was most certainly outside the scope of her employment at the time of the accident. The test to be employed in determining whether the dog was conducting some business of her employer at the time of this accident is whether the dog was doing what her employment contemplated. Morrison Motor Co. v. Manheim Services Corp., 346 So.2d 102 (Fla. 2d DCA 1977), cert. denied, 354 So.2d 983 (Fla. 1978). The business of the employer is the type the employee was employed to perform, occurs within the time and space limits of the employment, and is motivated by a purpose to serve the employer. Id. Although Shane was within the time and space limits of her employment, she had been prevented from properly performing her duties as a watchdog by being tied to the wagon.
Accordingly, the final judgment is REVERSED.
SCHEB, C.J., and OTT, J., concur.