## GLENNEY v ROSS
### Case No. 90-893-CA-D
Fifth Judicial Circuit, Marion County

December 18, 1990

### APPEARANCES OF COUNSEL

**John H. Piccin, Esquire,** for plaintiffs.
**Timothy Malloy, Esquire,** for defendant.

### OPINION OF THE COURT

RAYMOND T. McNEAL, Circuit Judge.

### *ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Plaintiffs, Renee Glenney and her husband, James Glenney, sued

defendant, Murray Ross, pursuant to § 787.04, Fla. Stat. (1985) to recover damages caused when Mrs. Glenney was bitten by defendant's Rottweiler. Defendant moved for summary judgment, relying on *Wendland v Akers,* 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla. 1979). Citing *Belcher Yacht, Inc. v Stickney,* 450 So.2d 1111 (Fla. 1984), plaintiff argues that § 767.04, Fla. Stat. (1985) provides the exclusive remedy for dog bite victims against dog owners and the exclusive defenses for dog owners. For that reason, and because they also contend there is no evidence of mischievous or careless provocation or aggravation of defendant's dog, plaintiff concludes that summary judgment for defendant is inappropriate. The court finds that § 767.04 does not apply to the instant situation and grants summary judgment for the defendant.

The material facts on which summary judgment is granted are not in dispute. Plaintiffs are the owners of Sonnigeshaus Training Kennel where they train and board dogs, including Rottweilers. James Glenney is a professional dog trainer. (R.G. p.7). (depositions are referred to by the deponent's initials and the page number) and has been president of the Florida Working Dog Association. (M. R. p. 9). Renee Glenney makes the arrangements on breeding and a lot of the boarding for the business. (J.G. p. 9).

At the time of this incident, defendant was in San Francisco, California and had been gone for several days. (R.G. p.6-7). Mr. Glenney had care, custody and control of defendant's dogs under a loose arrangement with defendant. (J.G. p. 8, M.R. p.11). Under this arrangement, Mr. Glenney would drive to defendant's kennels daily and care for defendant's dogs until defendant returned home. (R.G. p. 7). In return, Mr. Glenney was sometimes paid $50 to $75 and sometimes paid in goods or services. (R.G. p.4; M.R. p.11).

During this same time, plaintiffs were boarding a female Rottweiler for a third party, Helen Munne. (R.G. p. 12). Mrs. Munne's dog came into heat while at the Glenney's kennels, so Mrs. Munne asked Mrs. Glenney to breed the dog with defendant's dog. (R.G. p. 11). Mrs. Glenney had bred another of Munne's Rottweilers on an earlier occasion. (R.G. p. 11). In response to that request, Mrs. Glenney contacted defendant's office and obtained permission for the breeding. (R.G. p. 12).

On the day of the breeding the Glenneys took the Munne Rottweiler to defendant's kennels. After Mr. Glenney exercised the dogs, he released one of defendant's dogs into the security area for the breeding. Mrs. Glenney took Mrs. Munne's dog into the security area. (R.G. p.

16). After defendant's dog had penetrated Munne's dog and while they were still locked up, he bit Mrs. Glenney. (R.G. p. 15, p. 18).

Although the actual amounts paid by defendant and Mrs. Munne to the Glenneys are unclear, it is clear that the Glenneys were engaged in the commercial endeavors of caring for defendant's dogs and of boarding and breeding Mrs. Munne's dog. At the time Mrs. Glenney was bitten, defendant's dog was in the care, custody and control of Mr. and Mrs. Glenney and Mrs. Glenney, who had some experience breeding dogs (J.G. p. 14), was in control of the breeding. The breeding of the dogs by Mrs. Glenney was in furtherance of a business relationship between the Glenneys and Mrs. Munne.

Section 767.04, Florida Statutes (1986) imposes absolute liability on a dog owner when his dog bites someone who is in a public place or lawfully in a private place, including the home of the owner, except when the dog is mischievously or carelessly provoked or aggravated or when the owner has displayed a bad dog sign. *Donner v Arkwright-Boston Manufacturers Mutual Insurance Co.,* 358 So.2d 21 (Fla. 1978). In the earlier case of *Wendland v Akers,* the 4th District Court of Appeals found that this rule of strict liability did not apply to a veterinarian who was treating an owner's dog. The Florida Supreme Court denied certiorari in *Wendland* after their decision in *Donner.* However, in 1984, the Florida Supreme Court specifically overruled "any earlier decisions of the district courts of appeal to the contrary." *Belcher* at 1113. The rigid interpretation of § 787.04 established in *Donner* and *Belcher* has been consistently applied by the Florida Supreme Court. *See Kilpatrick v Sklar,* 548 So.2d 215 (Fla. 1989) (finding that the Fireman's Rule could not be used as a defense by a dog owner); 2ifReed v Bowen, 512 So.2d 198 (Fla. 1987) (finding that the affirmative defenses set forth in § 787.04 applies to infants). The one possible exception is *Noble v Yorke,* 490 So.2d 29 (Fla. 1986) where the court applied the doctrine of equitable estoppel to allow a dog bite victim to sue an owner who had instructed the victim to ignore a bad dog sign that was posted on the property in compliance with the statute.

*Wendland* was not overruled by *Belcher. Wendland* was decided in part on the status of the plaintiff at the time she was bitten. The plaintiff in *Wendland,* who was assisting her employer, a veterinarian, and the plaintiff in this case who was breeding dogs as part of a business, are not in the class of innocent third persons the statute is intended to protect. The absolute liability imposed by the statute is founded on the owner's responsibility to control his dog. Where a dog is left in the possession and control of persons who are in the business

128

of caring for dogs while the owner is away and unable to exercise control, it is unreasonable for those persons to have a cause of action under § 787.04 if they are bitten. For this reason, the court finds that when these persons undertake the owner's responsibility over a dog, they stand in the shoes of the owner and may not sue the owner if they are bitten in the process of exercising control over the dog. *Cf. Michalek v Shumate,* 524 So.2d 426 (Fla. 1988) (creating an exception to the dangerous instrumentality doctrine as a matter of public policy and pragmatism because an owner gives up authority and control when a vehicle is turned over to a firm for service and repair).

The court in *Wendland* also found that the process of treating the dog was "a classic example of what the Legislature intended to relieve an owner of liability for." *Wendland* at 370. Applying that same reasoning to the instant case, breeding two Rottweilers involves equal or greater careless aggravation or provocation. According to affidavits submitted by Mrs. Glenney in support of her memorandum in opposition to summary judgment, she was not a "professional breeder." These same affidavits illustrate that professional breeders know "that Rottweilers can be very difficult and dangerous during breeding." For these reasons, the court also finds that the breeding attempted by Mrs. Glenney is careless aggravation or provocation as a matter of law. Therefore, it is,

ORDERED AND ADJUDGED that defendant's Motion for Summary Judgment is granted.

DONE AND ORDERED in Chambers at Ocala, Marion County, Florida, this 18th day of December, 1990.