654 So.2d 116 (1995)
Kurt WIPPERFURTH, Petitioner,
v.
Patricia A. HUIE, Respondent.
No. 83476.
Supreme Court of Florida.
March 9, 1995.
Rehearing Denied May 12, 1995.
Francis J. Carroll, Jr. and Allison Morris of Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Daytona Beach, for petitioner.
William A. Parsons of Woerner & Parsons, South Daytona, for respondent.
SHAW, Justice.
Pursuant to jurisdiction granted under article V, section 3(b)(4) of the Florida Constitution, we review the decision in Huie v. Wipperfurth, 632 So.2d 1109 (Fla. 5th DCA 1994), which presents the following certified questions:
1. IS THE INDEPENDENT CONTRACTOR EXCEPTION TO THE DANGEROUS INSTRUMENTALITY DOCTRINE AVAILABLE TO A DOG OWNER AS A DEFENSE TO AN ACTION UNDER SECTION 767.04, FLORIDA STATUTES?
2. UNDER SECTION 767.04, DOES THE TERM "OWNER" INCLUDE A KENNEL OWNER OR VETERINARIAN WHO UNDERTAKES THE CARE, CUSTODY, AND CONTROL OF A DOG PURSUANT TO AN AGREEMENT WITH THE DOG'S ACTUAL OWNER?
Huie, 632 So.2d at 1113. We answer both questions in the negative.
The facts, as determined by the district court, are as follows:
Huie was employed by Gary Besset at the Ormond Pet and Kennel Club. Huie's duties included bathing, grooming, feeding, exercising, and medicating the animals at the kennel. Wipperfurth's dog, a 60- to 70-pound Doberman pinscher named "Duke," was boarded at the kennel in January 1990 for the purpose of receiving obedience training from Besset. While on duty, Huie was responsible for feeding, walking, and cleaning Duke. On the afternoon of January 30, 1990, while Huie was walking Duke, Duke jumped on Huie's chest and arms. Huie said "no, off," and she stepped back. Duke then dropped to the ground. When Huie turned to leave, however, Duke jumped on her back and bit her several times on the back and on the *117 right arm and shoulder. To Huie's knowledge, Duke never before had behaved in a hostile or otherwise unusual manner.
Id. at 1110. Huie attempted to recover damages from Wipperfurth pursuant to section 767.04, Florida Statutes (1989).[1] The trial court applied the common-law "independent contractor" exception to the dangerous instrumentality doctrine and rendered summary judgment in favor of Wipperfurth.[2] The district court reversed, based on its finding that pursuant to Carroll v. Moxley, 241 So.2d 681 (Fla. 1970), and Donner v. Arkwright-Boston Manufacturers Mutual Insurance Co., 358 So.2d 21 (Fla. 1978), common-law defenses were unavailable to an action brought under section 767.04 and that pursuant to Belcher Yacht, Inc. v. Stickney, 450 So.2d 1111 (Fla. 1984), the term "owner," as used in section 767.04, only applied to the dog's actual owner. The district court certified the above questions.
We answer the first question in the negative. Historically, the dangerous instrumentality doctrine has applied to cases involving automobiles, trucks, and heavy machinery. It is apparent that through enactment of chapter 767 of the Florida Statutes (1989), the legislature has chosen to make a dog owner's liability absolute, with certain enumerated exceptions. The owner cannot escape liability by virtue of the dangerous instrumentality doctrine. See Donner, 358 So.2d at 24 (the only defenses available to a dog owner are those stated in section 767.04). Since the doctrine itself is inapplicable to an action brought pursuant to section 767.04, the independent contractor exception is likewise inapplicable. We are cognizant of Wendland v. Akers, 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla. 1979), which applied the independent contractor exception to a case involving similar issues. Based on our review of Wendland, it is clear that the district court was struggling to avoid a harsh result and while we empathize with the court, we are unable to avoid the clear and unambiguous language of the statute. The dangerous instrumentality analogy cannot obviate the clear language of the statute. Accordingly, we disapprove Wendland to the extent it conflicts with this opinion.
We answer the second certified question in the negative in keeping with our *118 decision in Belcher Yacht, Inc. v. Stickney, 450 So.2d 1111 (Fla. 1984). In Belcher, this Court found that "section 767.04 pertains only to the owner. It is silent as to the custodian or keeper of a dog who is not the owner."[3]Id. at 1112. In so finding, we compared the wording of section 767.04, "the owners of any dog," with the wording of section 767.05, "an owner or keeper of any dog."[4] In line with Belcher, we accord the term "owner" its common meaning and find that owner, as used in section 767.04, does not include a kennel owner or veterinarian who undertakes the care, custody, and control of a dog pursuant to an agreement with the dog's actual owner.
In sum, the decision of the court below is approved, both certified questions are answered in the negative, and Wendland is disapproved to the extent it conflicts with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Section 767.04 states:

The owners of any dog which shall bite any person, while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of such dogs, shall be liable for such damages as may be suffered by persons bitten, regardless of the former viciousness of such dog or the owners' knowledge of such viciousness. A person is lawfully upon private property of such owner within the meaning of this act when he is on such property in the performance of any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States, or when he is on such property upon invitation, expressed or implied, of the owner thereof; provided, however, no owner of any dog shall be liable for any damages to any person or his property when such person shall mischievously or carelessly provoke or aggravate the dog inflicting such damage; nor shall any such owner be so liable if at the time of any such injury he had displayed in a prominent place on his premises a sign easily readable including the words "Bad Dog."
[2] In Florida Power & Light Co. v. Price, 170 So.2d 293 (Fla. 1964), we explained the exception as follows:

It may well be that said doctrines (dangerous instrumentality and inherently dangerous work) apply without exception to third party members of the public, but we do not believe they apply without exception... .
... .
[L]iability flowing from operation of the doctrines of dangerous instrumentalities and inherently dangerous work is subject to the exception that where the defendant owner contracts with an independent contractor for the performance of inherently dangerous work and the latter's employee is injured by a dangerous instrumentality owned by the defendant which is negligently applied or operated by another employee of the independent contractor but wholly without any negligence on the part of the defendant owner, the latter will not be held liable. The incidence of the independent contractor and injury to his employee in the course of the performance of the inherently dangerous work absent any negligence on the part of the contracting owner absolves the latter from liability. This exception, as stated, although not expressly spelled out in prior appellate decisions, is gleaned from the decisions cited.
... Such an exception would not be applicable where members of the general public are injured since they are not embraced in the relationship created by the independent contract.
Id. at 298-99.
[3] Belcher interpreted the 1979 version of section 767.04 and this opinion is reviewing the 1989 version. Both versions, however, are substantially the same.
[4] We note that effective October 1, 1990, the legislature placed in force section 767.11(7), which defines owner as "any person, firm, corporation, or organization possessing, harboring, keeping, or having control or custody of an animal or, if the animal is owned by a person under the age of 18, that person's parent or guardian." Since the effective date was subsequent to the facts in this instance, this new section is not applicable to this case. Ch. 90-180, § 2, at 834, Laws of Florida.