733 So.2d 538 (1999)
Anouse THEODORE, By and Through her husband, Christian THEODORE, Emmanuel Theodore, a minor, by and through his father, Christian Theodore, the Theodore children, Chriesnel Theodore, Johnny Theodore, Bronson Theodore, Moise Theodore, Chrisly Theodore, Christianouse Theodore, and Emmanuel Theodore, minors, by and through their father, Christian Theodore, and Christian Theodore, individually, Appellants,
v.
Annie Dawn-Marie GRAHAM, M.D., Annie Dawn-Marie Graham, M.D., P.A., Perinatal Associates of the Palm Beaches, P.A., Diagnostic Obstetrical Testing Services, Inc., South County Perinatal Associates, P.A., Comprehensive Obstetrical & Gynecological Services, P.A., and Women's Health Care Center, P.A., Appellees.
No. 97-3720.
District Court of Appeal of Florida, Fourth District.
March 10, 1999.
Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, Manuel Epelbaum of Robert J. Dickman, P.A., and John A. Thompson, Jr., Coral Gables, for appellants.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellees.
GROSS, J.
The issue in this case is whether Dr. Annie Dawn-Marie Graham was entitled to summary judgment based on her affirmative defense of sovereign immunity. We hold that the issue must be decided by a factfinder and not on summary judgment.
This case arose out of an incident involving a patient at the Regional Perinatal Intensive Care Center (RPICC), located within, and fully staffed and operated by *539 St. Mary's Hospital, Inc. (St. Mary's).[1] The patient was treated by Dr. Graham, a staff physician at St. Mary's, and the obstetrical director of the RPICC. In response to the lawsuit against her, Graham asserted the affirmative defense of sovereign immunity under section 768.28(9)(a), Florida Statutes (1997), which provides in pertinent part:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function.
(Emphasis supplied).
The trial court granted Graham's motion for summary judgment, ruling that the case was controlled by Stoll v. Noel, 694 So.2d 701 (Fla.1997). Stoll involved physicians who treated a patient at the Children's Medical Services' (CMS) Broward county facility, which was run by the Florida Department of Health and Rehabilitative Services.[2] The physicians worked at the facility under a consulting contract. The contract required the physician/consultants to abide by the terms published in the CMS Consultant's Guide and HRS manual. As described in the supreme court's opinion, the Guide vested great control in the CMS medical director over the nature and course of the physician/consultants' treatment of CMS patients:
The Consultant's Guide states that all services provided to CMS patients must be authorized in advance by the clinic medical director. The language of the HRS Manual ascribes to CMS responsibility to supervise and direct the medical care of all CMS patients and supervisory authority over all personnel. The manual also grants to the CMS medical director absolute authority over payment for treatments proposed by consultants. The HRS Manual and the Consultant's Guide demonstrate that CMS has final authority over all care and treatment provided to CMS patients, and it can refuse to allow a physician consultant's recommended course of treatment of any CMS patient for either medical or budgetary reasons.
Id. at 703. While agreeing that the physician consultants were independent contractors, the supreme court held that they were "agents" within the meaning of section 768.28(9)(a), who were entitled to immunity.
To reach its result in Stoll, the supreme court analyzed the consultants' employment contract in terms of "the degree of control retained or exercised by CMS." Id. Stoll applies the same test the court applied in Dorse v. Armstrong World Industries, Inc., 513 So.2d 1265, 1268 (Fla.1987), where the court wrote that "an entity or business acting as an independent contractor of the government, and not as a true agent, logically cannot share in the full panorama of the government's immunity." (Footnote omitted). To distinguish between a "true agent" and an independent contractor, the supreme court used the same language it used in Stoll.
The existence of a true agency relationship depends on the degree of control exercised by the principal. Generally, a contractor is not a true agent where the principal controls only the outcome of the relationship, not the means used to achieve that outcome.
Dorse, 513 So.2d at 1268 n. 4 (emphasis supplied). The result in Stoll turns on the extensive control retained by the government over patients' treatment; the CMS medical director had "final authority over *540 all care and treatment provided to CMS patients." Stoll, 694 So.2d at 703.
Viewing the record in the light most favorable to the party opposing summary judgment, we do not find that the employment contract in this case reserved to the government that extensive control over patients' course of treatment which justified the result in Stoll.
Regional perinatal intensive care centers were authorized by sections 383.15-383.21, Florida Statutes (Supp.1994). A "center" is defined as a unit designated by HRS "located within a hospital and specifically designed to provide a full range of health services to its patients." § 383.16(2). The statutory definition of "patients" includes "a woman who is experiencing a high-risk pregnancy" and "a newborn infant who needs intensive care," both of whom meet financial and medical eligibility requirements. § 383.16(3). Section 383.17 states that HRS may "contract with health care providers in establishing and maintaining centers...." Participation in a RPICC program is contingent upon HRS entering into a contract with a provider. See § 383.18. Section 383.19 provides that HRS shall adopt rules specifying standards for the development and operation of a center, including rules regarding equipment, facilities, staffing and qualifications of personnel and transportation services. Failure to comply with the standards established under section 383.19 constitutes grounds for terminating a contract with a provider. See § 383.19(3).
Pursuant to section 383.19, HRS enacted administrative rules to govern regional perinatal intensive care centers. See Fla. Admin. Code R. 64C-6[3]. The rules specify the equipment that is required for a labor and delivery area. See Fla. Admin. Code R. 64C-6.003(3)(b)(2). The rules also provide that the "obstetric director, or obstetrician designee, may terminate a patient's sponsorship under the program if the condition for which the patient was admitted to the RPICC Program no longer exists, only if the patient is referred elsewhere for medical care, as documented in the record." Fla. Admin. Code R. 64C-6.003(3)(c)(7)(b)(I). Finally, the rules provide for the determination of eligibility for the program:
Determination of medical eligibility of pregnant women for RPICC sponsorship shall be made by the RPICC director of obstetrics or CMS obstetrician consultant designee at the time of referral or following the initial examination at the center. The final medical decision for admission of a patient to a center shall be made by the director of obstetrics or CMS obstetrician consultant designee.

Fla. Admin. Code R. 64C-6.003(3)(b)4(c)2 (emphasis supplied). Unlike the situation in Stoll, the statutes and rules applicable in this case vest great control in the "obstetric director" over a patient's participation in the RPICC program.
In Graham's contract with HRS, there are provisions indicative of the status of an independent contractor. Graham agreed to be liable for claims, suits, and damages arising out of her negligent acts; she also agreed to indemnify HRS for damages arising out of her own negligent acts "in the course of the operation" of the contract. The contract obligates the doctor to comply with the administrative rules specifically pertaining to RPICC centers contained in Chapter 10J-7 of the administrative code. Rule 64C-6.003(3)(b)4(c)2, quoted above, gave Graham, as the center's director of obstetrics, the final authority regarding the admission of patients to the center. An attachment to her contract required Graham to develop a protocol establishing procedures to be followed for the transfer of patients with high risk needs. Unlike the situation presented in Stoll, no provision incorporated into Graham's contract gave the government the right to control Graham's decisions regarding *541 patient treatment. In her deposition, Graham testified that her contract with HRS placed no restriction on the exercise of her professional judgment in treating patients. According to Graham, HRS never attempted to dictate policies or procedures regarding how the government wanted her to diagnose or handle patients.
Insofar as this case needs to focus on Graham's relationship with a patient, there is at least a question of fact whether she was "controlled or subject to the control" of HRS in that aspect of the performance of the engagement which involved the treatment of patients. See King v. Young, 107 So.2d 751, 753 (Fla. 2d DCA 1958). Viewed in the light most favorable to appellants, the government's right to control the activities of Graham did not extend to the manner in which she was to provide treatment to patients. The contracts do not nullify the general rule that a physician is "`free to exercise his skill and his soundest judgment in rendering medical or surgical services without any interference from one who employs him and is not a servant or agent in the usual sense of those terms.'" Wendland v. Akers, 356 So.2d 368, 370 n. 6 (Fla. 4th DCA 1978) (quoting 41 Am.Jur. Physicians and Surgeons § 116), overruled on other grounds, Wipperfurth v. Huie, 654 So.2d 116 (Fla. 1995).
In a lawsuit which concerns a purported dereliction in the treatment of a patient, one view of the record is that there was not such a reservation of governmental control over Graham's actual doctoring of patients to render her an "agent of the state" protected by sovereign immunity. This case does not involve damage caused by an administrative snafu or deviation from administrative guidelines, which would fall under those areas subject to government control in the contracts at issue. This case is distinguishable from Stoll, where the government had "final authority over all care and treatment" provided to the patients by the physician consultants whose status was at issue in that case. Stoll, 694 So.2d at 703.
For these reasons, we hold that the issue of whether Graham is an "agent" of the state entitled to the section 768.28(9)(a) defense of sovereign immunity is a question of fact that cannot be resolved by summary judgment.
REVERSED AND REMANDED.
DELL and SHAHOOD, JJ., concur.
NOTES
[1] In this case, appellants have filed a notice of voluntary dismissal as to St. Mary's Hospital, Inc.
[2] The Children's Medical Services Act, Chapter 391, Florida Statutes (1993), authorized HRS to establish CMS clinics to provide medical care to indigent, chronically disabled children.
[3] At the time of the incident, the relevant rules were contained at Chapter 10J-7. The rules have been renumbered without substantial change.