DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KELLIANNE NASO,** as personal representative
of the Estate of Allan Dwoskin,
Appellant,

v.

**RONALD HALL** and **G4S SECURE SOLUTIONS (USA) INC.**,
Appellees.

No. 4D21-1521

[May 4, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE19024776.

Keith Chasin of the Law Office of Keith Chasin, Miami, and Gabriel M. Sanchez of The Sanchez Law Group, Miami, for appellant.

Irwin R. Gilbert and Janine K. McGuire of Conrad & Scherer, LLP, Fort Lauderdale, for appellees.

LEVINE, J.

Appellant, the personal representative for the estate, appeals the final summary judgment entered in favor of appellees on the grounds of absolute sovereign immunity under section 768.28(9), Florida Statutes. We find, based on *Lovelace v. G4S Secure Solutions (USA), Inc.*, 320 So. 3d 178 (Fla. 4th DCA 2021), that appellee G4S was entitled to limited sovereign immunity under section 768.28(5), Florida Statutes. Thus, we reverse the summary judgment because G4S is entitled to only limited sovereign immunity. Appellant also claims that the trial court erred in failing to allow her to amend the complaint to add a count for punitive damages. We disagree and find that the trial court did not err. Thus, we affirm the denial of the motion to amend to add a punitive damage claim.

Around 3:00 a.m. on October 25, 2017, a security guard for G4S, Ronald Hall, observed an elderly man, the "victim," sitting on a bus bench, which was not permitted since the bus terminal was closed. Hall advised the victim that he had to leave and called a taxi for him. The victim either

never left the bus terminal or returned because Hall later observed the victim and a younger man, the "assailant," on his security camera. Hall left his office to find out what was going on.

Meanwhile, two painters who were working on the premises observed the assailant harassing and teasing the victim. When the assailant started pushing the victim, one of the painters began recording on his cell phone. The painters alerted security.

Hall arrived approximately five minutes later. He was armed and wearing a G4S uniform. Hall attempted to call his supervisor for adequate reinforcement to make the situation safe for everybody involved. Hall later stated that he did not physically intervene or get in between the assailant and the victim because he was alone, and it would have been unsafe. According to Hall, his job was to observe, report, and ensure no one loitered.

Suddenly, the assailant attacked the victim and knocked him to the ground, causing his head to hit the concrete. Hall did not anticipate the assailant would suddenly rush over to the victim and knock him to the ground. According to Hall, there was nothing he could have done to prevent it. One of the painters agreed that the situation escalated rapidly, and it did not look like the assailant, who was smaller in stature, would endanger the victim's life. A video of the incident showed that the altercation lasted mere seconds.

Hall called 911. The victim passed away from his injuries over two months later. The victim's death was ruled a homicide.

Appellant, as personal representative of the victim's estate, sued Hall, G4S, and Broward County for negligence in failing to provide adequate security. The defendants filed answers and affirmative defenses, denying the allegations.

Hall and G4S moved for summary judgment, arguing that they were agents of the state and therefore entitled to sovereign immunity under section 768.28(9) and *G4S Secure Solutions (USA), Inc. v. Morrow*, 210 So. 3d 92 (Fla. 2d DCA 2016). In support of their motion, G4S and Hall relied on a video of the incident as well as the contract between Broward County and G4S for security services.

Appellant opposed summary judgment and moved to amend her complaint to allege causes of action for gross negligence and punitive

damages against Hall and G4S. The trial court denied the motion to amend as to punitive damages.

The trial court then granted summary judgment based, in part, on *Morrow*, where the Second District determined that the sheriff's office had a degree of control over the operation of G4S that created an agency relationship under section 768.28(5). The trial court did not have the benefit of *Lovelace*, which was issued after the trial court ruled in this case.

"The issue of sovereign immunity is a legal issue subject to the de novo standard of review." *Town of Gulf Stream v. Palm Beach Cnty.*, 206 So. 3d 721, 725 (Fla. 4th DCA 2016). Summary judgment is also reviewed de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

The old standard for summary judgment required a moving party to "show conclusively the absence of any genuine issue of material fact." *Orlando v. FEI Hollywood, Inc.*, 898 So. 2d 167, 168 (Fla. 4th DCA 2005). However, the Florida Supreme Court recently issued an amendment to the Florida summary judgment rule to match the federal rule. *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 309 So. 3d 192, 192 (Fla. 2020). The federal rule "requires summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citation omitted).

Article X, section 13 of the Florida Constitution provides: "Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." In 1973, the legislature exercised its authority and enacted section 768.28, which provides a limited waiver of the state's sovereign immunity for tort claims. § 768.28(1), Fla. Stat. (2017). The statute authorizes tort claims against "[t]he state and its agencies and subdivisions," but limits the state's liability for such claims to $200,000. § 768.28(5), Fla. Stat. (2017). "[S]tate agencies or subdivisions" is defined to include "corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities . . . ." § 768.28(2), Fla. Stat. (2017). The statute also provides that agents of the state acting within the scope of their employment have absolute immunity from tort claims:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function . . . .

§ 768.28(9)(a), Fla. Stat. (2017). "Officer, employee, or agent" is defined as including, but not limited to

> any health care provider when providing services pursuant to s. 766.1115; any nonprofit independent college or university located and chartered in this state which owns or operates an accredited medical school, and its employees or agents, when providing patient services pursuant to paragraph (10)(f); and any public defender or her or his employee or agent, including, among others, an assistant public defender and an investigator.

§ 768.28(9)(b)(2), Fla. Stat. (2017).

"The immunity in section 768.28(9)(a) extends to certain private parties who are involved in contractual relationships with the state, provided that such parties are 'agents' of the state." *M.S. v. Nova Se. Univ. Inc.*, 881 So. 2d 614, 617 (Fla. 4th DCA 2004). Whether the party being contracted with is an agent of the state turns on the degree of control retained or exercised by the state agency. *Stoll v. Noel*, 694 So. 2d 701, 703 (Fla. 1997). "[T]he right to control depends upon the terms of the employment contract." *Id.* When analyzing the issue of control, the focus should be on "the right to control, not the actual control . . . ." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 846 (Fla. 2003).

Appellant argues that the trial court erred in granting absolute immunity. Appellant relies on our opinion in *Lovelace v. G4S Secure Solutions (USA), Inc.*, which held that G4S was entitled to limited immunity under section 768.28(5), rather than absolute immunity pursuant to section 768.28(9). 320 So. 3d at 189. Additionally, appellant argues that the facts of the present case are different such that G4S should be classified as an independent contractor and not even entitled to limited immunity. Appellees, in turn, argue that *Lovelace* incorrectly gave G4S limited immunity instead of absolute sovereign immunity and ask that this court reevaluate our ruling in *Lovelace*.

As to both arguments from appellant and appellees, we decline to accept either request.

As to appellant, we find that the facts surrounding the control of Broward County over the employees of G4S are virtually the same in *Lovelace* and this case. The exact same contract was used in both cases. Appellant highlights that the G4S guard worked alone in an overnight shift

as opposed to the daytime shift in *Lovelace*, where the G4S guard worked side-by-side with Broward County employees. However, this minimal difference in the number of employees working side-by-side with the G4S guard can be based almost entirely on the fact that the G4S guard in the present case worked alone in an overnight shift. The time of the shift does not change the level of control that Broward County has over the G4S employees as evidenced by the contract.

As to appellees, we find, as we previously found in *Lovelace*, that G4S was entitled to limited sovereign immunity under section 768.28(5). Appellees rely on *Stoll* to advocate that G4S in this case should be entitled to absolute immunity. In *Stoll*, the supreme court found that physicians were agents of the state and thus entitled to sovereign immunity under section 768.28(9). 694 So. 2d at 703. However, because *Stoll* involved individuals, and not a corporation like G4S, the *Stoll* case does not support appellees' proposition that G4S was entitled to immunity under section 768.28(9). *See also Pagan v. Sarasota Cnty. Pub. Hosp. Bd.*, 884 So. 2d 257, 260 (Fla. 2d DCA 2004) (considering whether doctors had immunity under section 768.28(9) and whether a physicians' group had immunity under section 768.28(5)); *Keck v. Eminisor*, 104 So. 3d 359, 367-68 (Fla. 2012) (finding that a trolley driver was entitled to immunity under section 768.28(9)); *Theodore ex rel. Theodore v. Graham*, 733 So. 2d 538 (Fla. 4th DCA 1999) (considering whether a physician was immune from suit under section 768.28(9)).

Appellant also argues that the trial court erred in failing to allow her to amend the complaint for a count of punitive damages against both appellees.

"A trial court's denial of a motion to amend is reviewed for abuse of discretion." *Quality Roof Servs., Inc. v. Intervest Nat'l. Bank*, 21 So. 3d 883, 885 (Fla. 4th DCA 2009). A proposed amendment is futile if it is "insufficient as a matter of law." *Id.* (citation omitted).

Section 768.28(9)(a) states:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . .*

(emphasis added).

As discussed above, section 768.28(9) does not apply to G4S because it is a corporation. Rather, section 768.28(9) applies only to Hall, an individual. Pursuant to this statute, Hall is entitled to absolute immunity unless he acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights and safety. *See id.* "[W]anton" has been defined as "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." *Peterson v. Pollack*, 290 So. 3d 102, 110 (Fla. 4th DCA 2020) (citation omitted). "'Willful' means 'intentionally, knowingly and purposely.'" *Id.* (citation omitted).

Additionally, section 768.72, Florida Statutes (2017), provides:

(2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

(3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

(a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;

(b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or

6

(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

"The statute requires the trial court to act as a gatekeeper and precludes a claim for punitive damages where there is no reasonable evidentiary basis for recovery." *KIS Grp., LLC v. Moquin*, 263 So. 3d 63, 65 (Fla. 4th DCA 2019) (citation omitted). "This is because punitive damages are reserved for truly culpable behavior and are intended to 'express society's collective outrage.'" *Id.* at 65-66 (citation omitted). Notably, "the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter." *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016).

In the instant case, the trial court did not abuse its discretion in denying the motion for leave to amend. Appellant failed to make a reasonable showing by record evidence or proffer that would provide a reasonable basis for recovery of punitive damages. The evidence relied upon and proffered by appellant does not constitute intentional misconduct or gross negligence. Rather, the record evidence showed that Hall acted in accordance with the "Post Orders."

The Post Orders stated that in responding to crime, a security officer's "primary duties . . . are to observe and report." In accordance with this directive, after Hall observed the victim and the assailant on his security camera, he left his office to find out what was going on. The Post Orders also stated that security guards should "leave apprehension and arrest to the police whenever possible," that security guards should "[c]all for support at the first indication that it is needed," and that "[t]here are few, if any instances where [a security guard] should feel compelled to take action in a potentially dangerous situation alone and unaided." According to Hall's supervisor, security officers are instructed not to get in between two individuals who are having an altercation because that would put the security officer and others at risk. Consistent with the Post Orders and instructions, Hall attempted to call his supervisor and did not physically intervene.

Although the contract for security services between G4S and Broward County stated that security guard tasks include preventing and terminating injurious acts, Hall stated that there was nothing he could have done to prevent the assailant from suddenly rushing over to the victim and knocking him to the ground. A witness also agreed that the

situation escalated rapidly, and it did not look like the assailant, who was smaller in stature, would endanger the victim's life. A video of the incident shows that the altercation lasted mere seconds and that the injurious act occurred suddenly and unexpectedly. Based on this record, it cannot be said that Hall acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *See* § 768.28(9)(a), Fla. Stat. The record is devoid of evidence that Hall engaged in intentional misconduct or gross negligence. *See* § 768.72(2), Fla. Stat. As previously stated, "the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter." *Valladares*, 197 So. 3d at 11. Hall's conduct was not close to criminal in any respect. Therefore, appellant could not state a claim for punitive damages.

In summary, we find that *Lovelace* controls and G4S acted as an agent for Broward County and was entitled to sovereign immunity. However, like in *Lovelace*, G4S would receive only limited sovereign immunity under section 768.28(5), and not absolute immunity under section 768.28(9). Thus, we reverse the trial court's application of subsection (9) and remand for further proceedings under subsection (5). As to all other issues, including the trial court's denial of appellant's motion for leave to amend to allege a count for punitive damages, we affirm.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

WARNER and KLINGENSMITH, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**