Cheryl ARMSTRONG, Plaintiff-Respondent,†

SAMARITAN HEALTH PLAN INSURANCE CORPORATION,
Plaintiff,

v.

MILWAUKEE MUTUAL INSURANCE COMPANY, John J. Mack
and Ann Mack, Defendants-Appellants.

Court of Appeals

No. 93–1918. Submitted on briefs June 7, 1994.—Decided
February 7, 1995.

(Also reported in 530 N.W.2d 12.)

†Petition to review filed.

For the defendant-appellant the cause was submitted on the briefs of *Hinshaw & Culbertson*, with *Joseph M. Fasi*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.*, with *Victor C. Harding*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. John J. Mack and Ann Mack, and their insurer, Milwaukee Mutual Insurance Co., appeal from the trial court judgment, following a jury trial, awarding Cheryl Armstrong damages resulting from a dog bite she suffered while employed at a dog kennel. They argue that the trial court erred in: (1) denying their motion for summary judgment; and (2) denying their request for a jury question on comparative negligence. They also argue that the evidence was insufficient to support the jury's verdict.

This case presents an issue of first impression: whether, under § 174.02(1)(a), STATS. (the strict-liability dog-bite statute, which references § 895.045, STATS. (the contributory negligence statute)), a dog's legal owners can be liable to a kennel employee who was bitten by their dog, in the absence of any evidence of their negligence. We conclude that the trial court correctly determined that the statute allows the potential for both the legal owners and the kennel employee to share strict liability. We also conclude, however, that in this case the trial court erred in denying summary judgment for the dog's legal owners.

## I. BACKGROUND

The facts relevant to the issues on appeal are not in dispute. The Macks owned a Siberian Husky named "Mandy." Before going out of town, they placed Mandy at the Thistlerose Kennels, owned by Eleanor Jolly. Cheryl Armstrong was a part-time employee at Thistlerose responsible for various duties, which included bringing dogs inside the kennel building from the outdoor kennel-run areas. On January 9, 1991, as Armstrong was attempting to bring Mandy inside, Mandy bit Armstrong's hand. The bite became infected and produced serious complications requiring numerous surgeries and extensive hospitalization.

Armstrong sued the Macks and their insurer claiming, first, that the dog-bite injuries "were caused by the [Macks'] negligence and carelessness," and, second, that the Macks were strictly liable for the damages under § 174.02, STATS. The Macks denied negligence and asserted the affirmative defense that Armstrong "was herself negligent and contributed to and caused some or all of the alleged injuries." The Macks moved to dismiss the complaint and, in the

alternative, for summary judgment. The trial court denied the Macks' summary judgment motion and the matter proceeded to a jury trial. The jury found Armstrong negligent but not causally so. The trial court denied the Macks' motions after verdict and judgment was entered for Armstrong.

## II. DISCUSSION

Section 174.02, STATS., in relevant part, states:

(1) LIABILITY FOR INJURY. (a) *Without notice.* Subject to s. 895.045 [Contributory negligence], the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person.

Under § 174.001(5), STATS., " '[o]wner' includes any person who owns, harbors or keeps a dog." In this case, there was no dispute that the Macks were "owners" under the statute, and that Armstrong, as an employee of the kennel "keeping" Mandy, also was an "owner" under the statute.[1]

---

[1] On appeal, Armstrong makes a fleeting argument that she never agreed that, as an employee of Thistlerose, she also was a keeper/owner. Armstrong, however, provides only one record reference that even hints at that position. Immediately before the jury arrived for opening statements, counsel for Armstrong stated, "And therefore, whether Cheryl Armstrong is an employee or not of Thistlerose, which took possession of the dog as the keeper or harborer, makes no difference, and she is entitled to collect." The trial court never addressed that possibility, and the issue was never raised again.

Our record review confirms that, throughout the proceedings, the central issue was litigated and decided with the understanding that Armstrong, in common with her employer, was a keeper/owner. Thus, this decision does not address any

The Macks argued on summary judgment, however, that Armstrong's status as the dog's "owner" effectively foreclosed their status as "owners" for purposes of strict liability. They contended that "a cause of action in strict liability does not exist against the owners of a dog when that dog is boarded at a professional kennel for a fee," and that § 174.02, STATS., "DOES NOT IMPOSE STRICT LIABILITY ON SOMEONE FOR SIMPLY OWNING AN ANIMAL WHEN THAT PERSON TRANSFERS CONTROL OF THE ANIMAL TO A PROFESSIONAL." ARMSTRONG, HOWEVER, MAINTAINED THAT THE MACKS' ARGUMENT WAS NOT SUPPORTED BY THE LANGUAGE OF § 174.02 AND THAT BOTH SHE AND THE MACKS COULD BE "OWNERS" FOR PURPOSES OF IMPOSING LIABILITY.

The trial court denied the Macks' summary judgment motion, stating that under § 174.02, STATS., there could be "dual liability" for the dog's legal owner and the temporary keeper. The court further observed:

> Perhaps . . . contributory negligence [is] the outlet or relief valve for cases like this in which the claim is, if you give the dog to professional managers, that they ought to be able to take care of themselves and not get injured, that [they] would take enough precautions not to get injured; and, I think that does in a social sense, in a policy sense, provide for some check on the owner's absolute liability, otherwise every groomer who got nipped by a dog could sue every owner that sent the dog in.
>
> The principles of comparative negligence have to apply somehow to assess the conduct of the professional dog groomer or keeper to assess or at least fix some responsibility on their part like for being

potential issue that may exist should an "owner" distinction ever be drawn between a kennel and its employee.

bitten under the circumstances, so, I think, that balancing is consistent with the statute.

This court reviews decisions on summary judgment *de novo*, applying the same methodology as the trial court. *See* § 802.08(2), STATS.; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-315, 401 N.W.2d 816, 820 (1987). That methodology has been recited frequently and need not be repeated here. Construction of § 174.02, STATS., and its application to a set of facts present a question of law, which we review *de novo*. *Pattermann v. Pattermann*, 173 Wis. 2d 143, 149-150, 496 N.W.2d 613, 615 (Ct. App. 1992). Further, § 174.02 "is in derogation of the common-law and is to be strictly construed." *Id.* at 150, 496 N.W.2d at 615.

Thus, we first confront the question: when a legal owner places a dog in a kennel, does the dog keeper/"owner"'s strict liability replace the legal owner's strict liability under § 174.02, STATS., or is it shared with the legal owner's strict liability? Strictly construing the statute, and accepting the plain and unambiguous definition of "owner," we conclude that strict liability can be shared.

██

Section 174.02, STATS., "imposes strict liability" on a dog owner "subject only to the defense of comparative negligence." *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 808, 416 N.W.2d 906, 908 (Ct. App. 1987). As noted, " '[o]wner' includes any person who owns, harbors or keeps a dog." Section 174.001(5), STATS. "Keeping" a dog has been defined as "exercising some measure of care, custody or control over the dog." *Pattermann*, 173 Wis. 2d at 149-151 & n.4, 496 N.W.2d at 615 & n.4. It is undisputed that Armstrong acted as a temporary "keeper" of the dog and, thus, came within

the definition of "owner." The statute offers no basis to say that liability for one "owner" precludes liability for another "owner" as a matter of law. Thus, we agree with the trial court conclusion that the statute does allow the potential for "dual liability" of a legal owner and a keeper/owner. *See Janssen v. Voss*, 189 Wis. 222, 224, 207 N.W. 279, 280 (1926) (noting legal owner and temporary keeper have "dual authority" over dog).

Having resolved the legal issue, we turn to whether genuine issues of material fact precluded summary judgment. Based on the summary judgment submissions, we conclude that summary judgment should have been granted to the Macks because Armstrong failed to establish a genuine issue of material fact that the Macks were negligent.

Armstrong's brief in opposition to summary judgment asserted, "Prior to the attack, and unbeknownst to Ms. Armstrong, the husky had displayed vicious tendencies by unpredictably growling, barking and jumping at other employees of the kennel.... At no time before the attack had the Macks warned anyone of the husky's tendencies or propensity to attack and bite." The brief further asserted that "[t]he Macks should have known of these vicious tendencies and warned of the dog's propensity to attack and bite people." Armstrong, however, offered no evidence to support these assertions. Her brief opposing summary judgment referred only to the unsworn statement of Eleanor Jolly, attached to an affidavit filed by Armstrong's counsel. The Jolly statement said, in part:

> The dog, Mandy, acted tough while she was here according to other employees. She jumped, growled, barked and acted unpredictable toward my employees when [she] was in the outside kennel.

569

I don't know if Cheryl knew of Mandy's unpredictability.

■

Jolly's unsworn statement is insufficient under § 802.08, STATS., because it is not evidentiary. *See* § 802.08(3) (papers supporting or opposing motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence"); *see also Hopper v. City of Madison*, 79 Wis. 2d 120, 130-131, 256 N.W.2d 139, 143-144 (1977) (affidavit submitted by attorney containing matters not within his personal knowledge may not be considered in support of motion for summary judgment).

"[C]omparative negligence and causation are always relevant in a strict liability case." *Becker*, 141 Wis. 2d at 818, 416 N.W.2d at 912; *see also* WIS J I—CIVIL 1390 (reflecting both plaintiff and owner placed on special verdict for purposes of comparing causal negligence). Thus, although "[i]n some cases," a legal owner's "specific knowledge [or cause to believe his dog is vicious or mischievous] may not be necessary," and although the statute "dispense[s] with the necessity of proving scienter in cases when the injury is done by a dog because of a mischievous trait or propensity," *Nelson v. Hansen*, 10 Wis. 2d 107, 119, 102 N.W.2d 251, 258 (1960), the statute does not impose strict liability on the legal owner in the absence of any evidence of any such trait or propensity. In this case, Armstrong offered no evidence to support her assertions about Mandy.

Additionally, as a matter of common law, Armstrong failed to offer any evidence to support her assertion that the Macks had or should have had knowledge of any behavior by Mandy that would have

formed the basis for them to have had any concerns, or to have given any warnings, that she was of a vicious or mischievous nature. Thus, they failed to allege an essential element of a common-law negligence in a dog-bite claim. *See Pattermann*, 173 Wis. 2d at 148, 496 N.W.2d at 615.

Although we have located no cases exactly on point, we do note that our conclusion is consistent with the conclusions reached in several similar cases. *See Tschida v. Berdusco*, 462 N.W.2d 410 (Minn. Ct. App. 1990) (recognizing that legal owner and keeper/owner both could be liable under Minnesota dog-bite statute but dismissing strict-liability claim of veterinarian's employee because there was no negligence by the legal owner); *Wilcoxen v. Paige*, 528 N.E.2d 1104, 1106 (Ill. Ct. App. 1988) (owner and operator of dog boarding and grooming business barred from bringing action against dog's legal owner because plaintiff was an "owner" under Illinois dog-bite statute and therefore could not recover given her own failure to control dog); *Wendland v. Akers*, 356 So.2d 368, 371 (Fla. Dist. Ct. App. 1978) (veterinarian assistant's strict-liability claim against dog's legal owners dismissed because of absence of active negligence by legal owners); *see also Collins v. Kenealy*, 492 N.W.2d 679, 680-682 (Iowa 1992) (refusing to apply *Tschida, Wilcoxen* and *Wendland* because groomer not an "owner" under state strict-liability dog-bite statute that "has always placed responsibility *only* on the legal owner" (emphasis added)).

Therefore, because Armstrong failed to establish any genuine issue of material fact on the strict liability and the common-law negligence claims, we reverse and

remand with directions to enter judgment for the Macks and Milwaukee Mutual.[2]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[2] Because we are reversing on the summary judgment issue, we need not address the Macks' arguments regarding the form of the special verdict and the sufficiency of the evidence supporting the jury's verdict. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).