Cheryl ARMSTRONG, Plaintiff-Respondent-Petitioner,

SAMARITAN HEALTH PLAN INSURANCE CORPORATION,
Plaintiff,

v.

MILWAUKEE MUTUAL INSURANCE COMPANY, John J. Mack
and Ann Mack, Defendants-Appellants.

Supreme Court

*No. 93–1918. Oral argument April 29, 1996.—Decided June
26, 1996.*

(Also reported in 549 N.W.2d 723.)

For the plaintiff-respondent-petitioner there were briefs by *Victor C. Harding, Edward E. Robinson* and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.,* Milwaukee and oral argument by *Victor C. Harding.*

For the defendants-appellants there was a brief by *Joseph M. Fasi, II, Susan R. Tyndall* and *Hinshaw & Culbertson,* Milwaukee and oral argument by *Susan R. Tyndall.*

JANINE P. GESKE, J.   John Mack, Ann Mack and Milwaukee Mutual Insurance (the Macks) seek review of a published decision, *Armstrong v. Milwaukee Mutual Insurance Co.,* 191 Wis. 2d 562, 530 N.W.2d 12 (Ct. App. 1995), in which the court of appeals reversed the judgment entered in Milwaukee Circuit Court awarding Cheryl Armstrong damages for injuries resulting from a dog bite she incurred while employed at a dog kennel. We conclude that a person who is employed to care for a dog within his or her custody and control is a "keeper" of that dog within the statutory definition contained in Wis. Stat. § 174.001(5) (1993-94).[1] We further hold that, in a case such as this where a keeper is injured by the dog and there is no evidence of negligence on the part of the legal owners, a keeper may not recover damages from the legal owners of the dog under the strict liability statute, Wis. Stat. § 174.02(1).[2] Therefore, we affirm the decision of the court of appeals.

---

[1] Wisconsin Stat. § 174.001(5) reads: " 'Owner' includes any person who owns, harbors or keeps a dog."

[2] Wisconsin Stat. § 174.02(1) reads:

"LIABILITY FOR INJURY. (a) *Without notice.* Subject to s. 895.045 [contributory negligence], the owner of a dog is liable for the full

260

## FACTS

On January 7, 1991, John and Ann Mack went on vacation. As they had done previously, the Macks left their Siberian Husky, Mandy, to be boarded and cared for at the Thistlerose Kennels (Thistlerose). As before, they paid a fee for this service. At that time, Cheryl Armstrong (Armstrong) had worked for about a year at the kennels, which are owned by Eleanor Jolly.[3] Armstrong worked part-time at Thistlerose as a general handyperson (cutting trees, fixing kennels, etc.) in addition to performing various duties in relation to caring for the dogs.

The facility has 60 indoor heated kennels, each of which opens onto an outdoor exercise run. At trial, Armstrong testified that the routine for caring for the

amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property."

[3] The Macks initially sought to implead Eleanor Jolly as a third-party defendant. In a motion for summary judgment on this claim, Jolly pointed out that, by statute, Wisconsin's Worker's Compensation Act provides the exclusive remedy for injuries suffered by employees during the course of their employment. *See* Wis. Stat. § 102.03. This court has consistently held that third-party tortfeasors cannot sustain a claim for contribution from an employer. *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 177, 290 N.W.2d 276 (1980). The Macks subsequently moved to dismiss their claim against Jolly.

The record indicates that, although there were more than three employees at Thistlerose, Jolly did not have worker's compensation insurance. However, the department of administration must compensate any qualifying employee even if his or her employer was uninsured at the time of the injury. *See* Wis. Stat. § 102.81. Although both parties agree that Jolly is a keeper as defined by the statute, because she is not a party to this action and there are no legal issues which concern her, we will not address her involvement further.

dogs was the same no matter what shift one worked: letting each dog out into the outside run, cleaning the kennel, changing the water, and returning the dog to its kennel. On the evening of January 9, 1991, Armstrong released Mandy into the outdoor run, changed the water and cleaned the interior kennel. She was bitten while trying to get Mandy to go back inside. The bite itself was not severe but became infected, necessitating hospitalization and several surgeries.

## PROCEDURAL HISTORY

Cheryl Armstrong filed a complaint against the Macks and their insurer Milwaukee Mutual Insurance Company, alleging that, as Mandy's owners, the Macks were liable for Armstrong's damages on the grounds of common-law negligence and strict liability pursuant to Wis. Stat. § 174.02(1)(a). The Macks denied any negligence on their part and affirmatively responded that Armstrong's own negligence contributed in whole or in part to her injuries. The circuit court denied the Macks' motion for summary judgment. The case proceeded to trial solely on the strict liability claim as Armstrong conceded that there was no issue concerning the Macks' conduct. The jury returned a verdict finding that Armstrong had been negligent but not causally so and the court entered judgment in Armstrong's favor in the amount of $81,444.67. Following unsuccessful post-verdict motions, the Macks filed an appeal.

The court of appeals reversed the judgment entered by the circuit court based on its conclusion that summary judgment for the defendants had been erroneously denied. The court of appeals held that strict liability under § 174.02 can be shared between the legal owner of a dog and the keeper when the dog is

placed in a kennel.[4] Therefore, the court reasoned that the Macks were potentially jointly liable for injuries caused by their dog. However, the court concluded that, because Armstrong failed to present any evidence that the Macks had prior notice of Mandy's "vicious tendencies," there was no genuine issue of material fact and therefore summary judgment should have been granted.[5]

---

[4] The court of appeals indicated that it was undisputed that, as an employee/agent of Thistlerose, Armstrong, was, like her employer, a keeper. However, in arguments to this court Armstrong's counsel vigorously denied that such an "understanding" had been reached. The court of appeals apparently based its finding that the issue was undisputed on the following statement made by Armstrong's counsel in opposition to the Macks' request that the statutory definition of "owner" be read to the jury:

> I don't object to the reading of the strict liability. I just — Again, I don't see the point of getting into them talking about owners or keepers or harborers. That's, again, a legal issue. And there's no fact dispute between [defense counsel] and myself on this. I mean, I'll stipulate to many of then [sic] things he's saying, you know, for purposes of his appeal.

We do not find it necessary to resolve the parties' dispute as to "who said what and what it meant when they said it" because we hold as a matter of law that Armstrong was a keeper in this situation.

[5] As the court of appeals concluded, judgment in favor of the Macks would have been proper at the stage of summary judgment. Although Armstrong initially alleged negligence, the court of appeals properly found that no legally admissible evidence had been submitted in support of that claim, and subsequently, Armstrong conceded that there was no issue as to negligent conduct by the Macks.

## STANDARD OF REVIEW

The issues in this case have evolved as the claim has proceeded through the courts. At this juncture, the critical questions are: (1) whether an employee of a boarding kennel whose duties include caring for dogs is a "keeper" and therefore "owner" under Wis. Stat. § 174.001(5) and, if so, (2) may such a keeper who is injured while he or she is exercising control over the dog hold the legal owner, against whom no negligence is alleged, strictly liable under Wis. Stat. § 174.02?[6] Resolution of this appeal therefore requires this court to interpret a statute as it applies to a set of facts. This presents a question of law which we approach de novo without deference to the circuit court or the court of appeals. *Wyss v. Albee*, 193 Wis. 2d 101, 109, 532 N.W.2d 444 (1995).

## WHO IS A "KEEPER" OF A DOG?

Pursuant to Wis. Stat. § 174.001(5) an "[o]wner includes any person who owns, harbors or keeps a dog." Although the issues before us today are ones of first impression, this court and the Wisconsin court of appeals have had previous occasion to address the definition of "who . . . keeps a dog" as that phrase is used in

---

[6] Armstrong argued to this court that the Macks had "waived" the issue of whether Armstrong was a keeper. On the contrary, the record demonstrates that the Macks considered Armstrong's status as keeper central to their theory of defense. At pre-trial arguments, defense counsel clearly laid out for the circuit court its position that, "Miss Armstrong, as an employee of the kennel, was an agent of the kennel and that under the definition in the Wisconsin Statutes she in fact was the owner of the dog . . . ."

the statute. We note that, since their inception, Wisconsin laws governing liability for damage caused by dogs have defined "owners" as including those who keep dogs. § 2, ch. 383, Laws of 1852.

In *Hagenau v. Millard*, 182 Wis. 544, 195 N.W. 718 (1924), this court held as a matter of law that the defendant, who owned a building in which he operated a hotel and restaurant, was not a keeper of the dogs owned by his sister-in-law who lived on the premises and worked in the restaurant. We held that a keeper is one who harbors and protects a dog, who treats it as living at his or her house and undertakes to control the animal. *Hagenau*, 182 Wis. at 547. The casual presence of dogs will not suffice to transform a person into a keeper; there must be evidence that the person has "furnished them with shelter, protection, or food, or that they exercised control over the dogs." *Id.*, at 547-48.

This court addressed not only the definition of keeper in *Janssen v. Voss*, 189 Wis. 222, 207 N.W. 279 (1926), but also the relationship of keepers and legal owners. The issue in *Janssen* was whether the mother of the fourteen year-old dog owner "was a keeper of the dog at the time of the injury." *Janssen*, 189 Wis. at 223. The circumstances surrounding the injury were that the mother had to leave town to attend a funeral and arranged for the dog to be placed at a dog hospital during her absence. Despite explicit instructions from his mother to leave the dog at the hospital, her son took the dog from the hospital and tied it in the yard of the family's home where he was staying. *Id.* at 224. We concluded that when the owner-son took physical custody and possession of the dog, he became the legal keeper of the dog, thereby relieving his mother of any

responsibility for the dog's conduct under the strict liability statute. *Id.* at 225. We stated that,

> A keeper is defined as one "who keeps, one who watches, guards, etc.; one having custody." It is apparent that *the keeper of a dog may or may not be the owner of the dog.* Where the keeper is not the owner, it may be assumed, as a general proposition, that the dominion or authority of the keeper over the dog is a limited one, subject to be terminated at any time by the owner. . . . *The moment [the owner removes the dog from the custody of the keeper],* the dual authority theretofore exercised over the dog by the owner and the keeper is merged in the owner, and at that very moment *the keeper's rights and responsibilities concerning the dog are at an end. Id.* at 224 (citations omitted, emphasis added).

We held, in *Koetting v. Conroy*, 223 Wis. 550, 270 N.W. 625 (1936), that, although not the legal owner of the animal, a person who allows a dog to be kept at his dwelling and even feeds it from his table is a keeper and thereby subject to liability for the dog's conduct under Wis. Stat. § 174.02. *Koetting*, 223 Wis. at 552. Further, this court noted that, "[o]ne purpose of the statute is to protect domestic animals [and persons] from injury by dogs by whomsoever the dogs are kept or harbored, *and to make a person who keeps or harbors a dog responsible for all injuries inflicted by it . . . ." Id.* at 555 (emphasis added).

The court of appeals addressed the issue of who is a keeper in *Pattermann v. Pattermann*, 173 Wis. 2d 143, 496 N.W.2d 613 (Ct. App. 1992). There, the court held that a mother who merely allowed her adult son to bring his dog into her home for one half-hour while packing for a family trip was not a keeper or harborer of the dog. *Pattermann*, 173 Wis. 2d at 150-51. The

"transient invasion" by the dog was insufficient to bring the mother within the confines of Wis. Stat. § 174.001(5), according to the court, because there was no evidence that the dog lived on the premises, or was fed or in any way cared for by Mrs. Pattermann. *Id.*

■■■

Upon review of these cases we conclude that several factors are critical in determining who is a keeper and therefore an owner within the confines of chapter 174; the person in question must exercise some measure of custody, care or control over the dog. *See Hagenau*, 182 Wis. at 547-48 (exercise control over, or furnish with shelter, protection or food); *Janssen*, 189 Wis. at 224 (has custody, dominance or authority over); *Koetting*, 223 Wis. at 552 (keep at dwelling and feed); and *Pattermann*, 173 Wis. 2d at 150 (feed, care for, give shelter). Further, it is clear that a person's status as keeper can change over time, with the focal point being the time of the injury. The Macks affirmatively relinquished physical custody and entrusted their dog to the employees at Thistlerose for the purpose of providing her with care. Armstrong was employed to perform certain duties which included letting the dog out to exercise, cleaning its pen, and supplying it with water.[7] She was in the process of caring for and (at

---

[7] The fact that Armstrong performed other duties such as general maintenance work begs the question of how the law should characterize those activities even she described as "tak[ing] care of . . . dogs." Further, it unnecessarily distracts from the critical fact that she was engaged in her duties of caring for the dog at the time that the injury occurred. What Armstrong did in the other hours of the day, paid or unpaid, at Thistlerose or elsewhere, is irrelevant. Section 174.001(5) defines an "owner" as "any person who owns, harbors or keeps a dog." This statute is rendered meaningless if one who, in the

least attempting to) exercise control over Mandy at the time she was bitten. We conclude that Armstrong was a "keeper," and thus by statute an "owner," of the Macks' dog.

## APPLICABILITY OF WIS. STAT. § 174.02

### WHEN PLAINTIFF IS A KEEPER

We hold that when the legal owners of a dog are not negligent and are not exercising control over their dog, a person acting in the capacity as the dog's keeper cannot collect damages under Wis. Stat. § 174.02. Armstrong argues that whether or not she is a keeper is irrelevant to this case. Under the argument advanced by Armstrong, a keeper would be liable under Wis. Stat. § 174.02 only when a third party non-owner was injured. However, a legal owner would be liable to all injured parties, including other statutory owners such as a keeper.

We reject this position. There is no evidence that the legislature intended to treat keepers or harborers differently than legal owners. We conclude that the purpose of the statute is to protect those people who are not in a position to control the dog, and not to protect those persons who are statutorily defined as owners. An owner injured while in control of the dog may not use the statute to hold another owner liable.[8]

course of their employment, exercises control over and provides care for a dog is not found to be that dog's keeper.

[8] Of course, when there is negligence, there is nothing in this opinion which should be interpreted to prevent a keeper from pursuing a common-law negligence claim against another owner.

The weight of extrajurisdictional authority provides persuasive support for our conclusion. The court of appeals of Ohio faced a very similar factual scenario in *Khamis v. Everson*, 623 N.E.2d 683 (Ohio Ct. App. 1993). There, the plaintiff was working as a volunteer at his friend's boarding kennels. The plaintiff was bitten while trying to get a dog to return to its cage after he had changed the water and hay in the cage and left fresh food for the dog. *Khamis*, 623 N.E.2d at 684. Although the plaintiff did not contest his status as a keeper, he argued that the legal owner of the dog was liable for the damages under Ohio's absolute liability statute.[9] The court disagreed, concluding that,

> the legislature intended to protect those people who are not in a position to control the dog. In contrast, we believe the legislature did not intend to protect those persons (the owner, keeper or harborer of the dog) who have, by the terms of the statute, an absolute duty to control the animal. *Id.* at 687.

In Minnesota, the court of appeals addressed this issue in a case involving an employee in a veterinary who was bitten as she attempted to move a dog out of the kennel area. *Tschida v. Berdusco*, 462 N.W.2d 410 (Minn. Ct. App. 1990). The court noted that their statute[10] was designed to compensate third-party

---

[9] The relevant statute reads, in pertinent part:

"The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, . . ."

Ohio Rev. Code § 955.28(B).

[10] Minnesota Stat. § 347.22 provides:

"If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked

plaintiffs and could "be analyzed as not creating strict liability for a two party action involving people who both meet the statutory definition of owner." *Tschida*, 462 N.W.2d at 411. Because the veterinarian and the plaintiff had possession and control of the dog and plaintiff was assisting in caring for the dog at the time of her injury, the court held that she fell within the statutory definition of keeper. *Id.* at 412. And ultimately, the court held that "where there is no negligence by the legal owner, we further interpret the statute to exclude liability of the legal owner to the second party owner [keeper or harborer] for damages from being attacked or injured by the dog." *Id.* at 412-13.

Similarly, the court of appeals in Illinois ruled that a dog groomer who had accepted the responsibility of controlling a dog could not subsequently "maintain a cause of action for injuries resulting from her own failure to control the animal" under the Illinois Animal Control Act.[11] *Wilcoxen v. Paige*, 528 N.E.2d 1104,

or injured to the full amount of the injury sustained. The term 'owner' includes any person harboring or keeping a dog but the owner shall be primarily liable. The term 'dog' includes both male and female of the canine species."

[11] Illinois Rev. Stat. ch. 8, par. 366 provides:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained."

Illinois Rev. Stat. ch. 8, par. 352.16 states:

" 'Owner' means any person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him."

1106 (Ill. Ct. App. 1988). A person who voluntarily steps into a position of control over an animal comes within the statutory definition of "owner" and cannot maintain an action against the dog's legal owners for injuries they might suffer. *Id.*

In contrast, we find the cases upon which Armstrong relies unpersuasive. True, the kennel employee in *Wipperfurth v. Huie*, 654 So. 2d 116, 118 (Fla. 1995), was found not to be an "owner," but the statute in effect at the time of the injury only referred to liability of an "owner" and, unlike our own statute, did not define owner as including those who keep or harbor dogs. Further, as the Florida Supreme Court noted in *Wipperfurth*, the accident had occurred prior to passage of a new statutory provision which now defines an owner as "any person, firm, corporation, or organization possessing, harboring, keeping, or having control or custody of an animal . . ." Florida Stat. § 767.11(7). *Id.* at 118, n.4.

In *Collins v. Kenealy*, 492 N.W.2d 679, 682 (Iowa 1992), the Iowa Supreme Court held that delivery of a dog to a temporary custodian was not sufficient to bring that person within the statutory definition of "owner" as one "who keeps or harbors." However, we find *Collins* both factually and statutorily dissimilar and therefore not persuasive. The plaintiff dog groomer

---

Armstrong attempts to distinguish this case on the basis that the *Wilcoxen* court stated that Illinois courts have rejected a strict liability interpretation of the above statutes. *Wilcoxen v. Paige*, 528 N.E.2d 1104 (Ill. Ct. App. 1988). However, the caveats that prevent this statute from being one of strict liability (if the dog is provoked or the plaintiff is not peaceably and lawfully in the place where the injury occurs) could be analogized to limitations on strict liability in the Wisconsin statute under those circumstances where contributory negligence exists.

only had custody of the animal for a short period of time for the limited purpose of grooming and provided none of the sustenance or shelter associated with the definition of keeper developed under Wisconsin case law. Additionally, the court based its decision on "long established interpretations" by the Iowa courts of the state's strict liability statute which, unlike Wis. Stat. § 174.02, does not even allow contributory negligence as a defense. *Collins*, 492 N.W.2d at 682.

## CONCLUSION

██

We conclude that the statute imposes liability on anyone who owns, keeps or harbors a dog who injures a third party. However, a non-negligent owner cannot be held liable under Wis. Stat. § 174.02 to another owner who is injured while the latter is exercising control over the dog. Therefore, given the circumstances in this case, we hold that a keeper such as Cheryl Armstrong, employed to take care of a dog and who is exercising control over the dog at the time of injury, cannot invoke the protections of Wis. Stat. § 174.02 to hold the non-negligent legal owners, the Macks, liable. The court of appeals correctly concluded that summary judgment was appropriate since there were no material issues of fact or law to be decided and, thus, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.

WILLIAM A. BABLITCH, J. (*dissenting*). The majority concludes that a part-time employee of a dog kennel whose only duties with respect to the dog were letting the dog out of the kennel in order to clean the kennel and giving the dog water is a "keeper" of the dog

and therefore not entitled to the benefits of the strict liability statute. I conclude that a keeper of the dog within the meaning of the statute is one who cares for it the way an owner would, including providing it with shelter, care and sustenance. Given the very limited nature of Cheryl Armstrong's duties with respect to the dog, I must respectfully dissent with the majority's conclusion.

Black's Law Dictionary 868 (6th ed. 1990) defines a "keeper of dog" as "[a] harborer of a dog. Any person, other than owner, harboring or having in his possession any dog. One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do." To "harbor" is: "To afford lodging to, to shelter, or to give a refuge to." *Id.* at 717 (citations omitted).

In *Hagenau v. Millard*, 182 Wis. 544 (1924), this court addressed the same issue that we address in the present case: what is a "keeper of dogs?" We determined that whether or not a person is a keeper depends upon the peculiar facts and circumstances of each individual case. *Id.* at 547. We further reasoned that:

> To be a keeper of a dog one must harbor the animal, and the word "harbor" in its meaning signifies protection; and it has been held that the keeper is one who treats the dog as living at his house and who undertakes to control his action; "but the casual presence of an animal, or his presence if not so treated, does not constitute him such owner or keeper."

*Id.* at 547 (citations omitted). In *Hagenau*, the court held that the defendants were not keepers of the dog because there was no evidence that "they furnished them with shelter, protection, or food, or that they exercised control over the dogs." *Id.* at 548. There was

also no showing that "these dogs were so attached to Millard and his wife [the defendants] as to follow them upon the public streets or highways, or that the dogs were the constant companions of the Millards . . . ." *Id.* at 549. *See also Janssen v. Voss*, 189 Wis. 222, 207 N.W. 279 (1926); *Koetting v. Conroy*, 223 Wis. 550, 552, 270 N.W. 625 (1937) (concluding that defendant was a keeper when the dog lived in his house and was fed from his table).

More recently, in *Pattermann v. Pattermann*, 173 Wis. 2d 143, 149-50, 496 N.W.2d 613 (Ct. App. 1992), the defendant allowed her son to place his dog in the side entryway of her home while she and several other family members prepared to depart for a family reunion. A short time later, the dog leapt up and bit the face of the plaintiff, the fiancee of another of the defendant's sons. The circuit court dismissed the plaintiff's actions, finding that the defendant was not a keeper or harborer of the dog. In affirming, the court of appeals held that the conduct of the defendant in "[m]erely directing where the dog was to be placed for such a short time does not establish the custodial relationship necessary for a keeper." *Id.* at 150. The court stated:

> Here, Mandy was temporarily in Sallie's home with Scott's family for about a half-hour before the accident occurred. The dog did not live there, and there is no evidence that Sallie fed or cared for the dog in any way.

> The word "harbor" by its meaning signifies protection. *Hagenau*, 182 Wis. at 547, 195 N.W. at 719. "Harboring a dog" means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog.

274

*Id.* at 150-51. The court of appeals found that a "strict construction" of the word harbor suggested that "Mandy's transient invasion of Sallie's home while the family finished preparations for their trip" was insufficient to trigger the statute.

Like *Pattermann*, the facts of the present case do not support a finding that Armstrong is a keeper of the Macks' dog. Armstrong described her functions at Thistlerose as performing general maintenance work, including cutting trees, laying cement, fixing dog kennels and rebuilding dog houses. In addition to being a handy person, Armstrong helped clean the dog runs at night. The only testimony elicited by the Macks as to her specific job duties was that she was a part-time employee working a couple of hours at night and every other weekend. When asked by her attorney what her functions were at Thistlerose, Armstrong described her duties as follows:

> To do various chores with the dogs, sometimes doing a shift on weekends. When there wasn't help available I'd fill in on weekends. I do night chores mostly, work by myself, and I did general maintenance from cutting down 50-foot pine trees to laying cement to fixing dog kennels to rebuilding dog houses.

Armstrong also described how she cleaned the kennels at Thistlerose:

> Well, if you were going to clean the inside kennels, you'd let the dogs out and you dump out the water, and you could clean it two ways. You could clean up whatever mess was in there, you could clean it with a pressure cleaner, or you could clean it with a bucket and water and soap. You squeegee it dry, you let the dog back in, and then you do the same thing to the outside.

Armstrong's only involvement with the dogs was to move them in and out of the kennels and outdoor runs so that she could clean their pens. In order to perform these job duties, Armstrong would call the dogs in from the outdoor runs, and, if calling failed, she would use treats to lure them inside. Although calling their names and using treats usually worked, on rare occasions, if a dog refused to come in, she was instructed to enter the outside run with a board in front of her to coax the dog through the opening.

There is no evidence presented that Armstrong had any voice in decisions regarding the care or custody of kennel dogs. Armstrong lacked any significant dog-related responsibilities, such as feeding, grooming, or exercising the dogs. Like the defendant's conduct in *Pattermann*, Armstrong's sole conduct with regard to the dogs at the kennel consisted of merely moving the dogs from their pens to an outdoor run and back again so she could clean up "messes" in the pens.

A keeper of a dog within the meaning of the statute is one who cares for it the way an owner would, treating it as living in his or her household, and providing it with shelter, care and sustenance. Here, there is no evidence in the record that Armstrong, as a part-time employee of a kennel, did any of that.

Based upon a careful reading of the record in this case, I conclude that Armstrong is not a "keeper" of the Macks' dog within the meaning of Wis. Stat. § 174.001(5). Therefore, I would hold the Macks strictly liable to Armstrong under the statute, subject to comparative negligence. Accordingly, I would not reach the other issues presented.

I am authorized to state that Chief Justice Roland B. Day and Justice Ann Walsh Bradley join in this dissent.