IN the MATTER OF Nicholas L. CARPENTER, a Minor:

TOWER INSURANCE COMPANY, INC., Plaintiff-Appellant,†

v.

Gary CARPENTER, Defendant-Third Party Plaintiff-Respondent,

v.

Jeffrey SZALACINSKI, Third Party Defendant.

Court of Appeals

*No. 95–2932. Oral argument July 31, 1996.—Decided October 2, 1996.*

(Also reported in 556 N.W.2d 384.)

†Petition to review denied.

On behalf of the plaintiff-appellant, there were briefs and oral arguments by *Terry J. Booth* of *Fellows, Piper & Schmidt* of Milwaukee.

On behalf of the defendant-third party plaintiff-respondent, there was a brief by *James C. Herrick, Jr. and Michele D. Miller* of *Herrick Law Office, S.C.* of Fond du Lac. There were oral arguments by *Michele D. Miller*.

On behalf of Nicholas L. Carpenter, there was a brief by *John A. Neal and Beth D. Osowski* of *Curtis, Wilde & Neal Trial Lawyers* of Oshkosh. There were oral arguments by *Beth D. Osowski*.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Tower Insurance Company, Inc., appeals from a judgment awarding Gary Carpenter $50,000 in underinsured motorist (UIM) benefits on the following grounds: (1) that the Tower policy does not provide UIM coverage; (2) that Tower is entitled to the return of its $50,000 payment because it was a mistake; and (3) that the doctrine of accord and satisfaction is not applicable. Because Tower's payment of $50,000 was a final negotiated settlement of Carpenter's claim, we affirm the trial court.

Carpenter's wife, Sandra, was killed in an automobile accident in January 1994. American Family Mutual Insurance Company insured the at-fault driver, and after negotiations with Carpenter's

attorney, James Herrick, American Family tendered the $100,000 limits of the bodily injury portion of its policy in exchange for a complete release of American Family and its insured. Prior to Carpenter's acceptance of that payment, Herrick notified Carpenter's insurer, Tower, of American Family's offer pursuant to *Vogt v. Schroeder,* 129 Wis. 2d 3, 383 N.W.2d 876 (1986). That notification consisted of a copy of a letter Herrick had sent to American Family which memorialized their telephone conference discussing the insurance company's offer to tender the limits of its bodily injury coverage, and included the following paragraph:

> [W]e are hereby notifying [Tower] of the tentative settlement between our client, Gary Carpenter, and American Family Mutual Insurance Company.

The copy sent to Tower also included a blind postscript:

> Our client's claims have a value in excess of $100,000. As is apparent, Tower Insurance Company will be required to pay its underinsured motorist coverage limits . . . . Please forward a copy of the automobile policy that was in full force and effect on the date of the subject accident of January 27, 1994.

This letter was dated July 1, 1994.

In response to this letter, on August 19, 1994, Tower advised Herrick by telephone that it would not substitute a payment from its UIM coverage for American Family's payment.[1] A substitute payment

---

[1] Jeffrey Szalacinski, the claims representative, stated in his affidavit that before the decision was made not to substitute payment for American Family, he hired a firm "to conduct a financial investigation of the driver which had collided with [Sandra Carpenter's] car."

would have been necessary had Tower chosen to protect its subrogation rights. Tower also informed Herrick that it would pay its $50,000 UIM coverage limit to Carpenter. These decisions followed an in-house discussion between the following Tower employees: Jeffrey Szalacinski, the claims representative who had reviewed the file; two claims managers, one of whom directly supervised Szalacinski; and Geraldine Garrity, a Tower vice-president and director of claims. A check for $50,000 was mailed on August 29, 1994.

Upon learning of the payment, Carpenter's insurance agent inquired of Tower whether the payment had been properly made, based on the fact that American Family's liability limit was greater than the Tower policy UIM coverage limit. On September 20, 1994, after reviewing its policy, Tower requested that the check be returned.

Carpenter declined to return the check and Tower commenced this action. Both sides brought motions for summary judgment. The trial court ruled that Tower was not entitled to a return of the $50,000 payment, finding that the check represented a settlement, and awarded the check to Carpenter pursuant to the doctrine of accord and satisfaction. Tower now appeals.

We review decisions on summary judgment de novo, applying the same methodology as the trial court. *Armstrong v. Milwaukee Mut. Ins. Co.,* 191 Wis. 2d 562, 568, 530 N.W.2d 12, 15 (Ct. App. 1995), *aff'd,* 202 Wis. 2d 258, 549 N.W.2d 723 (1996). That methodology, set forth in § 802.08(2), STATS., has been recited often and we need not repeat it here. *See Armstrong,* 191 Wis. 2d at 568, 530 N.W.2d at 15. This court is not bound by a trial court's conclusions of law and decides such

matters de novo. *See First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

Tower first claims that Carpenter should be required to return the payment because its policy does not provide UIM coverage under these facts. Tower's policy defined an "underinsured motor vehicle" as "a land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident, *but its limit for bodily injury liability is less than the limit of liability for this coverage."* The at-fault driver carried an American Family bodily injury policy with limits of $100,000. Under the terms of Tower's policy, the other driver was not driving an underinsured motor vehicle. While we agree with Tower's belated assessment of its own policy's coverage, we conclude that this factor is not dispositive of the issue presented.

Tower next argues that the $50,000 payment was a mistake of fact and therefore should be returned. Tower claims that the check was tendered "because Tower did not read and know the applicable provisions of its insurance policy." Carpenter counters this with his claim that the payment was a settlement of a disputed amount, and as such, Tower should be held to its bargain under the doctrine of accord and satisfaction. Tower submits that the doctrine of accord and satisfaction is not applicable to the instant case. In support of this, Tower quotes the following language from *Erickson v. Gundersen,* 183 Wis. 2d 106, 116, 515 N.W.2d 293, 298 (Ct. App. 1994): "While the Clinic based its cross-claim on accord and satisfaction, the rule does not normally give rise to an affirmative claim or a cause of action."

While the more common usage of accord and satisfaction is as an affirmative defense to a creditor's

claim that money paid did not satisfy a debt, we see no reason why the contract principles of accord and satisfaction would not be applicable to the issue presented in the instant case. Furthermore, the statement quoted from *Erickson* is dicta. The court in the *Erickson* case subsequently determined that the doctrine was inapplicable because the parties did not have a disputed claim. *Id.* at 116-17, 515 N.W.2d at 298. Thus, the *Erickson* court did not make a determination as to whether accord and satisfaction was applicable to the affirmative claim brought in that case.

Resolution of the issue presented requires consideration of the legal bases for the conflicting claims, as well as the undisputed facts leading up to the issuance of the check.[2] The law in Wisconsin is well settled that a payment in full settlement of a claim which is disputed as to amount discharges the entire claim. *Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.,* 116 Wis. 2d 95, 113, 341 N.W.2d 655, 664 (1984). Resolution of a controversy involving something of monetary value and of interest to the parties is sufficient consideration for such a claim. *Id.* The common law rule of accord and satisfaction rests not only on principles of contract law but also on principles of sound public policy. *Id.* at 110-11, 341 N.W.2d at

---

[2] Tower states in its brief-in-chief that several of the trial court's recitations of fact are inaccurate or incorrect when compared to the information provided in the affidavits. However, Tower does not specifically identify those factual statements which it believes to be inaccurate. We have conducted an independent review of the facts, and we have not found any material inaccuracies in the trial court's recitations of fact.

371

663. Such a rule promotes the public interest in resolving disputes informally and without litigation. *Id.* at 111, 341 N.W.2d at 663.

The trial court considered the undisputed facts and determined that Carpenter entered into a settlement agreement with Tower. The trial court stated that it

> place[d] great weight on the nature of the parties and their position to each other . . . . On the one hand, you had Gary Carpenter aided by skilled counsel well versed in the law, and on the other hand you had an insurance company whose sole business, at least in this context, is to review claims, make decisions, and make payments on claims under their policies . . . .

The trial court also determined that the affidavits and record of correspondence indicated that Herrick made a demand that Tower pay its UIM coverage limits. In response to that demand, Tower looked at the nature of the claim, reviewed its options and then decided to pay $50,000. In accepting Tower's offer, Carpenter made a decision to forego a possible $100,000 claim. This provided consideration for the agreement. On Tower's part, the fact that this agreement resolved a claim operated as consideration.

We concur with the reasoning of the trial court. Correspondence between Herrick and Carpenter which predates Herrick's demand that Tower tender the UIM coverage limits outlines pertinent legal considerations relating to Carpenter's claim against American Family and possible claims against his own UIM insurer. As early as May 11, 1994, Herrick advised Carpenter that "based upon the present status of the law you have at

least a 50% opportunity to pursue a claim successfully against [Tower]."

Herrick's August 31 letter which followed Tower's offer of a $50,000 settlement clearly outlined the relevant case law and analyzed Carpenter's claim against Tower in relation to it. Herrick noted that while Carpenter could pursue a potential claim of $100,000 from Tower,[3] rejection of Tower's offer of $50,000 would result in arbitration. The Herrick analysis then considered the fact that the outcome of such a hearing could result in the loss of the $50,000 if the arbiters were to adopt the reasoning of the *Smith* and *Link* cases. *See Smith v. Atlantic Mut. Ins. Co.*, 151 Wis. 2d 542, 444 N.W.2d 465 (Ct. App. 1989), *aff'd*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), *see also Link v. General Casualty Co.*, 185 Wis. 2d 394, 518 N.W.2d 261 (Ct. App. 1994).

Additionally, the record is clear that Tower held a meeting to discuss Herrick's July 1 letter which contained the demand for the tender of the UIM policy limits. That meeting included Szalacinski, two claims managers and Garrity. While their affidavits disavowed any discussion of whether the UIM coverage should be tendered, Szalacinski admitted that when the decision was made to pay the $50,000, "It was my opinion that a settlement was reached." Furthermore, notes made by Patricia Lamon, another Tower employee, during a telephone conference with Szalacinski on September 6, suggest that there had been some consideration of a possible "stacking" claim.

Based on our independent review of the undisputed facts, we conclude, as did the trial court,

---

[3] Carpenter had two cars insured with Tower, each of which provided $50,000 of UIM coverage.

that Tower's payment of $50,000 was a settlement of a disputed claim. As the trial court stated, "Even though both parties don't verbally, aggressively bargain down each other, there is a conscious process of sophisticated parties." The affidavits support the conclusion that Tower made the payment as a final settlement.[4]

Tower argues that even with our conclusion that its payment was an accord and satisfaction of a disputed claim, mistake is an exception to that doctrine. Wisconsin follows the general rule that "[a] party who has expended money by mistake of fact may ordinarily recover such sum in an action for money had and received." *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees v. Danielson,* 24 Wis. 2d 33, 36, 128 N.W.2d 9, 10-11 (1964). A mistake of fact has been defined as "[a]n unconscious ignorance or forgetfulness of the existence or nonexistence of a fact, past or present, material to the contract." *Grand Trunk W. R.R. Co. v. Lahiff,* 218 Wis. 457, 461, 261 N.W. 11, 13 (1935). Tower contends that the assumption it made regarding its liability under the UIM portion of Carpenter's policy was a mistake of fact, and as such operates to bar the application of the doctrine of accord and satisfaction. We are unpersuaded.

We conclude that the doctrine of accord and satisfaction is not defeated by Tower's argument of mistake. Tower cites the following section of 66 AM. JUR. 2D *Restitution and Implied Contracts* § 119 (1973), in support of this contention:

---

[4] The letter from Szalacinski to Herrick which included the settlement check stated, "I would ask that you please have your client sign and return the enclosed General Release. This should then conclude this claim."

> It is a firmly established general rule that money paid to another under the influence of a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which would not have been paid if it had been known to the payor that the fact was otherwise, may be recovered . . . .

Tower, however, fails to cite to the next section, § 120, which reads:

> The rule above set forth, that money paid under a mistake of fact is recoverable, is subject to certain well-defined exceptions. Thus, a payment induced by mistake cannot be recovered *if . . . the money is received in good faith in satisfaction of an equitable claim* . . . . [Emphasis added.]

Based on our previous conclusion that the payment was made as a settlement of a disputed claim, Tower cannot now rescind that settlement on a theory of mistake. All relevant information was available to both parties when the agreement was reached. We cannot say that Carpenter lacked good faith in receiving the settlement proceeds. Tower cannot now recover the $50,000 because it determined that it made a bad bargain.

*By the Court.*—Judgment affirmed.