Thomas KULEKOWSKIS and Sandra Kulekowskis, Individually and as Special Administrator of the Estate of Jeffrey Kulekowskis, Deceased, Plaintiffs,

v.

BANKERS LIFE AND CASUALTY COMPANY, Defendant-Respondent,

WPS HEALTH INSURANCE, Defendant,

AMERICAN FAMILY INSURANCE, Defendant-Appellant.

Court of Appeals

*No. 96–0613. Submitted on briefs December 3, 1996.—Decided February 12, 1997.*

(Also reported in 563 N.W.2d 533.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James J. Mathie* of *Mitchell, Baxter, O'Meara & Mathie, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terrance L. Kallenbach* and *David J. Nolden* of *Capwell and Berthelsen* of Racine.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J. American Family Insurance appeals from a judgment requiring it, inter alia, to pay Bankers Life and Casualty Company on its subrogation claim to recoup medical payments. American Family now raises the following issues for our review: (1) that the trial court failed to follow the appropriate procedure in making its determination; (2) that Bankers Life has not retained a contractual right to seek subrogation in this case; (3) that Bankers Life does not have a claim for equitable subrogation; (4) that the American Family policy specifically excludes recovery by Bankers Life; and (5) that overriding American Family's subrogation exclusion clause violates its freedom to contract. Because we conclude that the second and fourth claims are determinative, we initially direct our attention to those.

American Family's claims all revolve around conflicting clauses in two separate insurance contracts and question whether Bankers Life can exercise a right of subrogation in light of contract language in the

American Family policy which excludes payment under its underinsured motorist (UIM) coverage to any "person or organization claiming by right of subrogation." Because we conclude, under Wisconsin case law and the language of the policies at issue, that the Bankers Life policy includes a right of subrogation which overrides the American Family subrogation disallowance, we affirm.

The underlying action in this case arose out of a one-car accident which killed the driver of the vehicle and a passenger, Jeffrey Kulekowskis. The driver's insurance company paid its liability limits and was released.[1]

Jeffrey's parents, the Kulekowskises, were insured by American Family under three separate automobile policies, each of which contained UIM coverage. The Kulekowskises also carried health insurance through Bankers Life, which had paid certain medical bills and expenses stemming from the accident. The Kulekowskises brought a lawsuit, seeking recovery under their UIM coverage; Bankers Life, named as a defendant by the Kulekowskises, cross-claimed against American Family to recover the medical payments it had made on behalf of Jeffrey. Bankers Life and American Family then filed cross-motions for summary judgment on the subrogation issue.

The trial court granted summary judgment to Bankers Life, concluding that the subrogation exclusion in the American Family policy "has been precluded by the language in the [Bankers Life] plan." Following a trial on the issue of damages in order to settle the Kulekowskises' UIM claim against American Family, the court ordered that American Family pay the Bank-

[1] The limits paid were $50,000 for liability and $5000 for medical expenses.

ers Life claim in the amount of $39,455.27, plus costs.[2] It is from that portion of the final judgment which American Family appeals.

We review decisions on summary judgment de novo, applying the same methodology as the trial court. *See Armstrong v. Milwaukee Mut. Ins. Co.,* 191 Wis. 2d 562, 568, 530 N.W.2d 12, 15 (Ct. App. 1995), *aff'd,* 202 Wis. 2d 258, 549 N.W.2d 723 (1996). That methodology, as set forth in § 802.08(2), STATS., has been recited often and we will not repeat it here. *See Armstrong,* 191 Wis. 2d at 568, 530 N.W.2d at 15. In addition to our review of the summary judgment determination, this appeal also requires the interpretation of provisions in two insurance contracts. Construction of an insurance contract is a question of law also subject to de novo review. *See Continental Cas. Co. v. Homontowski,* 181 Wis. 2d 129, 133, 510 N.W.2d 743, 745 (Ct. App. 1993).

American Family argues that Bankers Life is not entitled to recover its payments for Jeffrey's medical care because it has not retained a contractual right to seek subrogation, nor does it have a claim for equitable subrogation. Furthermore, American Family contends that the policy language of its UIM coverage specifically excludes Bankers Life's claim for subrogation.

A right of subrogation may be statutory, contractual or arise through equity. *See Demmer v. American Family Mut. Ins. Co.,* 200 Wis. 2d 94, 98, 546 N.W.2d 169, 170 (Ct. App. 1996). We first address the question of whether Bankers Life has a contractual right of sub-

---

[2] Although the court granted the summary judgment motion, Bankers Life was required to await the outcome of the trial in order to determine whether its insured was made whole.

rogation, having concluded that this is the dispositive question.[3] *See id.* at 98, 546 N.W.2d at 170-71.

■

We then turn to a review of relevant portions of the conflicting insurance policies. An insurance policy is to be construed as it would be understood by a reasonable person in the position of the insured, and it is to be given its common and ordinary meaning. *See id.* at 98, 546 N.W.2d at 171. The Bankers Life policy contained the following pertinent language:

### REIMBURSEMENT PROVISION

If a covered person is injured, and benefits are paid by this Plan:

a. the Plan shall be immediately reimbursed by the covered person for any damages collected, whether by action at law, settlement or otherwise, to the extent that the Plan has provided benefits to or on behalf of any such covered person;

b. the Plan shall have a lien, to the extent of benefits provided. Such a lien may be filed against the person who's [sic] act caused the injury, the person's agent or a court having jurisdiction in the matter; and

---

[3] In its first issue, American Family disputes the trial court's analysis, claiming that it "engaged in a comparison of the insurance policies without first determining that Bankers Life was even entitled to subrogation." We find no error in the trial court's approach. While Bankers Life claims a contractual right of subrogation, were we to find that no contractual right existed, we would then be required to examine whether an equitable right of subrogation existed. *Cf. Demmer v. American Family Mut. Ins. Co.*, 200 Wis. 2d 94, 98, 546 N.W.2d 169, 170-71 (Ct. App. 1996). This is the same analysis which the trial court employed.

c. the Plan requires the covered person to furnish such information and assistance and to execute such documents or other instruments as the Plan may require to facilitate enforcement of the Plan's rights hereunder, and shall take no action prejudicing such rights.

The American Family UIM coverage provision stated:

**We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle.**

The policy then defined "insured person" as:

a. **You** or a **relative.**

b. Anyone else **occupying your insured car.**

c. Anyone, *other than a person or organization claiming by right of assignment or subrogation,* entitled to recover damages due to **bodily injury** to **you**, a **relative** or another occupant of **your insured car.** [Emphasis in italics added.]

Insurance contracts are subject to the same rules of construction as any other contract. *See Whirlpool Corp. v. Ziebert,* 197 Wis. 2d 144, 152, 539 N.W.2d 883, 886 (1995). In construing policy provisions, the policy should be considered as a whole. *See Schaefer v. General Cas. Co.,* 175 Wis. 2d 80, 84, 498 N.W.2d 855, 856 (Ct. App. 1993). We therefore look at the language contained in the reimbursement provision of the Bankers Life policy to determine whether it includes a right of subrogation.

In paragraph (a), the Bankers Life policy states that it shall be reimbursed "for any damages collected, whether by action at law, settlement or otherwise . . . ."

It goes on to state in paragraph (b) that "the Plan shall have a lien . . . against the person who's [sic] act caused the injury . . . *or a court having jurisdiction in the matter*." (Emphasis added.) Finally, paragraph (c) contains the following broad subrogation language: "the Plan requires the covered person to . . . take no action prejudicing [its] rights."

The first paragraph states that if it has made any payment on behalf of its insured, it *shall be reimbursed for any damages collected*. The policy further specifies that this right of reimbursement exists whether the insured collects through a lawsuit, settlement *or otherwise*. This broad language plainly establishes Bankers Life's right to be reimbursed by its insured if damages are collected from any other liable party.

In the next paragraph, Bankers Life reserves for itself another option. It states that it may file a lien against the wrongdoer, an agent *or a court having jurisdiction in the matter*. This last statement, a disjunctive, plainly reserves Bankers Life's right to bring an action against any potentially liable party. *See Dailey v. Secura Ins. Co.,* 164 Wis. 2d 624, 629, 476 N.W.2d 299, 301 (Ct. App. 1991) (" 'Any party who may be liable' is not limited to wrongdoers.").

Finally, in the last paragraph of this section, the policy includes broad language prohibiting its insured from taking any action to prejudice its rights. This is "boiler plate" language inserted to protect the company's subrogation rights. Reading this section of the policy as a whole, we conclude that by its plain language, Bankers Life has reserved a right of subrogation against any liable party.

American Family, however, argues that the Bankers Life policy language "reserves a subrogation claim

only for 'damages collected' against the 'person whose act caused the injury.' " It offers a statement from *Employers Health v. General Casualty Co.,* 161 Wis. 2d 937, 469 N.W.2d 172 (1991), which it contends defines damages as "pecuniary compensation from a negligent act of another" and then reasons that because it was only obligated to pay its insured under the UIM endorsement, these monies paid are not "damages collected." We are unpersuaded by this characterization of the court's language in *Employers Health* or by American Family's reasoning.

The policy at issue in *Employers Health* contained the phrase "recover damages from a responsible third party." *Id.* at 945, 469 N.W.2d at 175. Within that context, the court construed the entire phrase and arrived at its determination that this language did not confer a right of subrogation against another insurer. "Damages" was gratuitously defined in reference to the following phrase, "a responsible third party." *See id.* at 946, 469 N.W.2d at 175-76. We agree with the statement in Bankers Life's brief that the definition in *Employers Health* specifies "*what* may be recovered, but is neutral as to *who* may be liable."

We are also unpersuaded given American Family's narrow reading of the language of the Bankers Life policy. While American Family's construction focuses on two phrases in the reimbursement section, it ignores other equally pertinent language that is part of the same section. We find the overlooked language to be particularly applicable to the subrogation issue under the facts presented here.

■

Having concluded that by its plain language the Bankers Life policy reserved a right of subrogation, we must yet consider the impact of the subrogation exclu-

sion clause in the American Family policy. The subrogation exclusion clause in American Family's policy is plain and unambiguous, and not reasonably susceptible to more than one construction by a reasonable person in the position of the insured. *See Continental Cas.,* 181 Wis. 2d at 133, 510 N.W.2d at 745. The task before us is to decide which policy language prevails. *See WEA Ins. Corp. v. Freiheit,* 190 Wis. 2d 111, 117, 527 N.W.2d 363, 365 (Ct. App. 1994).

In *WEA Insurance,* this court determined that language which prohibited the insured from impairing the insurer's subrogation rights *at any time* was sufficient to preserve an insurer's right of subrogation. *See id.* at 120, 527 N.W.2d at 366-67. This was true, irrespective of a conflicting uninsured motorist policy exclusion. *See id.* While the court acknowledged in that decision that the subrogation exclusion was in direct conflict with the statute governing uninsured motorist coverage, § 632.32, STATS., the court also determined that the subrogation exclusion was overcome by the prohibition in the other policy which prevented the insured from impairing its subrogation rights. *See WEA Ins.,* 190 Wis. 2d at 119-20, 527 N.W.2d at 366-67.

In *Demmer,* 200 Wis. 2d at 102, 546 N.W.2d at 172, this reasoning was extended and applied to a similar exclusion found within a UIM policy. This court there determined that as in *WEA Insurance,* if the insurer who is seeking subrogation has a policy which "functionally recites" the preservation of its subrogation rights without any time limitation, such language will prevail over subrogation exclusion language in a conflicting policy. *See Demmer,* 200 Wis. 2d at 102-03, 546 N.W.2d at 172; *see also WEA Ins.,* 190 Wis. 2d at 120, 527 N.W.2d at 367.

In the Bankers Life policy, an insured is required to "take no action prejudicing such rights." This language recites no time limitation, and we conclude that it is analogous to the language we upheld in *WEA Insurance* and *Demmer*. The Bankers Life policy has secured its subrogation rights as against the American Family policy.

However, American Family contends that this analysis ignores the time-limiting language it reads in the Bankers Life policy, where the section which includes the paragraph prohibiting any interference with the company's subrogation rights begins with the clause "[i]f a covered person is injured, and benefits are paid by this Plan." American Family argues that this is a time limitation which parallels the time limitation which we construed as disallowing a subrogation claim, and therefore requires our decision to follow the reasoning of that case. *Cf. Continental Cas.*, 181 Wis. 2d at 134-35, 510 N.W.2d at 745-46.

The precise language we focused on in the *Continental Casualty* case was: "[Our insured] must do everything necessary to secure our rights *and must do nothing after 'loss' to impair them.*" *Id.* at 131, 510 N.W.2d at 744 (emphasis added). The insured in that case had signed an agreement with a demolition company which included a waiver-of-subrogation clause. *See id.* After this separate contract was executed and work began, the building was damaged in a fire caused by the demolition company's negligence. After paying its insured, Continental Casualty attempted to subrogate a claim against the demolition company's insurer. Focusing on the above-quoted language, we held that when placed in opposition to the waiver-of-subrogation clause, the Continental Casualty policy had failed to

protect its subrogation rights in this instance. *See id.* at 135, 510 N.W.2d at 746.

American Family's argument now asks that we apply the rationale of *Continental Casualty* to the Bankers Life policy and construe its language protecting its subrogation rights as a time-limited provision. We decline to do so. The fact that the reimbursement section begins with a statement that it is applicable "[i]f a covered person is injured, and benefits are paid by this Plan" does not operate as a time bar negating the broad reach of the subsequent subrogation clause. We conclude that the reasoning of *WEA Insurance* and *Demmer* is instructive, and we construe the Bankers Life language as analogous.

American Family also argues that Bankers Life has no claim for equitable subrogation. In light of the foregoing, this issue is moot and will not be addressed. *See State ex rel. Wis. Envt'l Decade v. Joint Comm.*, 73 Wis. 2d 234, 236, 243 N.W.2d 497, 498 (1976).

As a final issue, American Family claims that the analysis that the Bankers Life policy language prevails over its subrogation exclusion language "violates its freedom to contract." American Family claims that "[t]o arbitrarily and capriciously give effect to the terms of the Bankers Life policy while disregarding the terms of the American Family policy violates American Family's constitutional right to contract."

We do not address this argument on several grounds. First, this argument was not raised to the trial court, and therefore is waived. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). Second, as should be apparent from the foregoing analysis, the law in Wisconsin does not "arbitrarily and capriciously" give effect to one insurer's policy in contravention of another. After examining the conflicting

policies in the instant case, we conclude that the subrogation rights outlined in the Bankers Life policy must prevail.

*By the Court.*—Judgment affirmed.